# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

## COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| AARON MORRIS, Individually, and as Special Administrator of the Estate of CORNELIA MORRIS, Deceased,<br><br>Plaintiff,<br><br>v.<br><br>THE LOREAL GROUP, a Foreign Corporation, L'OREAL, U.S.A., a Delaware Corporation, and d/b/a SOFT-SHEEN CARSON,<br><br>Defendant | No. | 2008L007368<br>CALENDAR/ROOM F<br>TIME 00:00<br>Product Liability |

## COMPLAINT AT LAW

Now Comes Plaintiff AARON MORRIS, Individually, and as Special Administrator of the Estate of CORNELIA MORRIS, Deceased, by and through his attorneys, CHADWICK & LAKERDAS, and herein complains of the Defendant, L'OREAL, USA, d/b/a SOFT SHEEN-CARSON, as follows:

1. JANE CRAIG, CLARENCE MORRIS, JR., BETTY MORRIS, AARON MORRIS, ATHENA MORRIS, RICKY MORRIS, ANTHONY MORRIS, STACEY MORRIS, TYRONE MORRIS are all adult children of the decedent and are residents of County of Cook, City of Chicago, State of Illinois.

2. AARON MORRIS has previously been appointed Special Administrator Of The Estate Of Cornelia Morris.

3. In July 2006, CORNELIA MORRIS, Deceased, purchased one unit of Soft Sheen-Carson Dark & Lovely hair colour in "Natural Black" from a retail store in Cook County, Chicago, Illinois.

4. On July 10, 2006, CORNELIA MORRIS, Deceased, applied Dark & Lovely, a hair dye, manufactured by and under the SOFT SHEEN-CARSON division of L'OREAL, U.S.A., which is a wholly owned subsidiary of THE LOREAL GROUP, at her home located at 8729 S. Prairie Avenue, Cook County,

Chicago, Illinois, and then subsequently suffered anaphylactic shock, was transported to and, ultimately, died at Jackson Park Hospital, 7531 S. Stony Island Ave., Cook County, Chicago, Illinois.

## II. JURISDICTION AND VENUE

5. That the Defendant, THE L'OREAL GROUP, is a foreign corporation organized under the Laws of France, with its principle place of business at 14, rue Royale, 75008 Paris, France, and doing business as L'OREAL USA, a wholly owned subsidiary of THE L'OREAL GROUP incorporated under the Laws of the State of Delaware, and SOFT SHEEN-CARSON, a division of L'OREAL USA, which are headquartered at 575 5th Avenue, New York, New York, 10017, and registered to do business in the State of Illinois, and may be served with process of this Court on its registered agent, Illinois Corporation Service C, which may be served at 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

6. That Defendant is a company which has been engaged in the business of manufacturing, selling and distributing hair dye called Dark and Lovely under their Soft Sheen Carson brand.

7. That Defendant has used the ports, roads and other means of transportation to transport their hair dye products into the State of Illinois and into Cook County where they sell and distribute their products directly or indirectly through distributors to retail stores.

8. The Defendant is subject to the jurisdiction of this court in that Defendant transacted and continues to transact business by selling their hair dye products to retail stores in the State of Illinois and Cook County, where they have committed and continue to commit the tortious acts as affirmed by the factual allegations contained in this complaint.

9. The tortious action alleged herein was committed in whole or in part, and affects commerce in, and defendants do business in, Cook County and elsewhere throughout the State of Illinois.

10. The amount in controversy exceeds $50,000.

## III. STATEMENT OF FACTS

11. That on or about the latter part of July, 2006, Plaintiffs' Decedent, CORNELIA MORRIS, decided to dye her hair. Plaintiff used Soft Sheen Carson® Dark and Lovely which she had purchased in a retailer in Cook County, Illinois.

12. That the Plaintiffs' Decedent, CORNELIA MORRIS, was a regular user of Soft Sheen Carson® Dark and Lovely and had used said product several times a year for several years.

13. That Defendant's product was applied as per the instructions contained within the instruction guide.

14. That a day after purchasing Defendant's product, Plaintiffs' Decedent, CORNELIA MORRIS, read Defendant's instruction guide and performed an Allergy and Strand Test 48 hours before coloring.

15. That Plaintiffs' Decedent, CORNELIA MORRIS, examined the test area and found no reaction to the area where the color solution was applied.

16. That Plaintiffs' Decedent, CORNELIA MORRIS, then applied the Soft Sheen Carson® Dark and Lovely Coloring System product to her natural dry hair.

17. That after application of Soft Sheen Carson® Dark and Lovely and while waiting for the color to process per the instruction on the packaging of the Coloring System, the Plaintiffs' Decedent, CORNELIA MORRIS, began to suffer from difficulty with breathing and shortness of breath.

18. That due to these difficulties, Plaintiff CLARENCE MORRIS, summoned an ambulance for Plaintiffs' Decedent, CORNELIA MORRIS.

19. That an ambulance treated Plaintiffs' Decedent, CORNELIA MORRIS, while transporting her to Jackson Park Hospital

20. That Plaintiffs' Decedent, CORNELIA MORRIS, arrived at Jackson Park Hospital with a swollen shut airway, and was pronounced dead on arrival at the aforementioned hospital by Dr. Williams at 3:16 p.m. on July 10, 2006.

21. That a postmortem examination was conducted by the Cook County Medical Examiner pursuant to the expiration of Plaintiffs' Decedent, CORNELIA MORRIS. (See Exhibit "A," attached herein, copy of Report of Postmortem Examination for Cornelia Morris).

22. That Clare H. Cunliffe, M.D., Assistant Medical Examiner, examined Plaintiffs' Decedent on behalf of the Cook County Medical Examiner and issued an opinion as to the cause of the death of CORNELIA MORRIS. (Ex. A at 4).

23. Dr. Cunliffe determined that Plaintiffs' Decedent, CORNELIA MORRIS, died of an anaphylactic reaction to hair dye. (Ex. A at 4).

24. That Defendant designed, manufactured, marketed, sold, and placed into the stream of commerce Soft Sheen Carson® Dark and Lovely Haircolor knowing that it could cause Chemical leukoderma, cancer, damage to the liver, kidneys, lungs, asthma, birth defects, fatal allergic reactions and other harmful effects to humans.

25. That Defendant suppressed, concealed, misrepresented and obscured data on the adverse side effects of Soft Sheen Carson® Dark and Lovely Color.

26. The Defendant is aware or should have been aware of studies and data linking Soft Sheen Carson® Dark and Lovely Color with anaphylactic shock, death, chemical leukoderma, cancer, damage to the liver, kidneys, lungs, asthma and birth defects, but continued to design, produce, manufacture, market, distribute and sell Soft Sheen Carson® Dark and Lovely Color without any warning label as to the potential health hazards or detrimental side effects associated with Soft Sheen Carson® Dark and Lovely Color.

27. That despite its actual knowledge of the detrimental side effects of Soft Sheen Carson® Dark and Lovely Color, the Defendant failed to warn the Plaintiffs' Decedent and the public at large of the harmful and detrimental side effects of Soft Sheen Carson® Dark and Lovely Color.

28. That Defendants test the chemical in Soft Sheen Carson® Dark and Lovely Color, prior to manufacturing, marketing, distributing and selling Soft Sheen Carson® Dark and Lovely, and knew about the detrimental side effects.

29. That the Defendant published false and misleading information about the safety and potential adverse side effects of Soft Sheen Carson® Dark and Lovely Color.

30. That at all times, the Defendant knew or should have known that Soft Sheen Carson® Dark and Lovely Color would be used by the public at large, Plaintiffs' Decedent being part of the public, young children and pregnant women, who may have a family history of cancer, or may be suffering from liver, kidney and lung health problems, including and not limited to asthma. That Defendant also knew that the product causes birth defects.

31. That Defendant designed, developed, manufactured, marketed, and distributed Soft Sheen Carson® Dark and Lovely Color which the Defendant knew, or through the exercise of reasonable care, should have known was defective and would cause damage to the public at large, Plaintiffs' Decedent being part of the public, young children and pregnant women.

32. That Defendant failed to warn, the foreseeable users of the potential health hazards and health costs associated with the use of Soft Sheen Carson® Dark and Lovely Color.

33. That Defendant systematically failed to provide adequate warning notice to the public at large, Plaintiffs' Decedent being part of the public at large, and under age children with proper instructions in how to remove Soft Sheen Carson® Dark and Lovely Color from their hair, even though Defendant had a duty to warn the public.

34. That the Defendant systematically has had the public believe that the only thing the Soft Sheen Carson® Dark and Lovely Color may cause is an allergic reaction which in certain rare cases can be severe (See Ex. A, Packaging and Labeling of Soft Sheen Carson® Dark and Lovely Color), skin irritation and allergy that can be determine by a preliminary test, and that products may cause blindness if use on eyelashes or eyebrows, thereby contributing to the false impression cultivated by Defendant.

35. The Defendant at all times has failed to perform its duties to insert proper warning label on its products, Soft Sheen Carson® Dark and Lovely Color

36. The Defendant's actions constitute violations of statutory and regulatory provisions.

37. That Soft Sheen Carson® Dark and Lovely Color used by the Plaintiffs' Decedent and the public at large, including children and pregnant women was and still is defective, unreasonably dangerous and unfit for its intended use, in addition, to having highly harmful and deadly effect on the publics' health at large, Plaintiffs' Decedent being part of the public, under age children, and pregnant women, and people with cancer, asthma, liver, kidney and lungs health problems.

38. That Plaintiffs' Decedent used Soft Sheen Carson® Dark and Lovely Color in the manner that was intended. At the time of such use, Soft Sheen Carson® Dark and Lovely Color had not been changed from the time it was designed. That P-phenylenediamine, among one of the most dangerous chemical in the Soft Sheen Carson® Dark and Lovely Color has been used since the development of the product.

39.     That Soft Sheen Carson® Dark and Lovely Color will continue to cause to the public-at-large, under age children, and pregnant women with cancer, asthma, liver, kidney and lungs health problems.

40.     That Defendant exposed Plaintiffs' Decedent to each of the toxic materials that have specific health hazard chemicals listed in paragraphs 40 through 137.

41.     That **HYDROGEN PEROXIDE** causes skin burn and dermatitis.

42.     That **SODIUM STANNATE** causes irritation with redness and pain to skin.

43.     That **TETRA-SODIUM PYROPHOSPHATE** causes skin irritation.

44.     That **ISOPROPYL ALCOHOL** causes skin irritation.

45.     That **RESORCINOL** causes skin irritation and cause redness, itching, dermatitis, edema or corrosion of affected area. That Resorcinol causes loss of the superficial layers of skin.

46.     That **P-PHENYLENEDIAMINE** can be absorbed through the skin and causes chemical leukoderma.

47.     That **HEXYLENE GLYCOL** irritates skin (skin irritation can cause a secondary loss of color).

48.     That Defendant's cocktail of the ultra hazardous or poisonous chemicals listed above, contained in Defendant's products, triggered and caused Plaintiffs' Decedent anaphylactic shock, and her resultant death. The chemicals listed above which cause skin irritation, can also cause a secondary loss of color; and are inherently dangerous to the skin and causes serious and significant or catastrophic health consequences or harm.

49.     That **P-PHENYLENEDIAMINE** poses potential gastrointestinal or liver toxicity hazards.

50.     That **RESORCINOL** poses potential gastrointestinal or liver toxicity hazards.

51.     That **HYDROGEN PEROXIDE** poses potential gastrointestinal or liver toxicity hazards.

52.     That Defendant's cocktail of ultra hazardous or poisonous chemicals listed above, contained in Defendant's products, exposed Plaintiffs' Decedent and consumers to these harmful chemicals that causes gastrointestinal or liver toxicity hazards in users and serious and significant or catastrophic health consequences or harm.

53. That **P-PHENYLENEDIAMINE** poses potential kidney toxicity hazards.

54. That **PROPYLENE GLYCOL** has severe effect on individuals with kidney disorders.

55. That Defendant's cocktail of ultra hazardous or poisonous chemicals listed above, contained in Defendant's products, exposed Plaintiffs' Decedent and consumers to these harmful chemicals that causes kidney toxicity hazards in users and serious and significant or catastrophic health consequences or harm.

56. That **P-PHENYLENEDIAMINE** potential to cause immune system response resulting in problems with the lungs and airways (lung sensitization).

57. That **P-AMINOPHENOL** potential to cause immune system response resulting in problems with the lungs and airways (lung sensitization).

58. That **HEXYLENE GLYCOL** irritates lungs. Hexylene Glycol is used as coupling agent in the manufacturing of hydraulic fluids, industrial cleaning compounds, soluble oils and dry cleaning soaps. Further, Hexylene Glycol is used in latex paints as a valuable additive. In addition, Hexylene Glycol among many other uses is used as a solvent plasticizer in surface coating.

59. That **HYDROGEN PEROXIDE** is corrosive to lungs.

60. That Defendant's cocktail of poisonous chemicals listed above, contained in Defendant's products, exposed Plaintiffs' Decedent and consumers to these harmful chemicals that causes problems with the lungs and airways (lung sensitization) in users and serious and significant or catastrophic health consequences or harm.

61. That **EDTA** irritates eyes.

62. That **HYDROGEN PEROXIDE** cause eye burns and produces irritation, characterized by a burning sensation, redness, tearing, inflammation, and possible corneal injury. That Hydrogen Peroxide is corrosive to eyes. Further, Hydrogen Peroxide may cause irreversible tissue damage to the eyes which will cause blindness.

63. That **SODIUM STANNATE** causes irritation, redness and pain to eyes.

64. That **PROPYLENE GLYCOL** may cause transitory stinging and tearing.

65. That **HEXYLENE GLYCOL** irritates eyes.

66. That **ALCOHOL DENAT** (Alcohol Denatured) may cause eye irritation.

67.     That **PENTASODIUM PENTETATE** is an eye irritant.

68.     That **P-PHENYLENEDIAMINE** causes redness, pain and swelling of the eyelids. As well as blurred vision or permanent loss of vision (blindness).

69.     That **HYDROGEN PEROXIDE** cause eye burns and produces irritation, characterized by a burning sensation, redness, tearing, inflammation, and possible corneal injury. That Hydrogen Peroxide is corrosive to eyes. Further, Hydrogen Peroxide may cause irreversible tissue damage to the eyes which will cause blindness.

70.     That **SODIUM STANNATE** irritates eyes.

71.     That **TETRASODIUM PYROPHOSPHATE** causes redness and pain to eyes.

72.     That Defendant's cocktail of ultra hazardous or poisonous chemicals listed above, contained in Defendant's products, exposed Plaintiffs' Decedent and consumers to these harmful chemicals that causes "eye damage" in users and serious and significant or catastrophic health consequences or harm.

73.     That **HYDROGEN PEROXIDE** may cause severe and permanent damage to the digestive tract. Hydrogen peroxide also causes gastrointestinal tract burns and may cause perforation of the digestive tract. Further, it may cause severe digestive tract irritation with abdominal pain, nausea, vomiting and diarrhea. If inhaled, may cause ulceration of nasal tissue, insomnia, nervous tremors with numb extremities, chemical pneumonia, unconsciousness, and death.

74.     That **P-PHENYLENEDIAMINE** poses sense organ toxicity hazards.

75.     That **HYDROGEN PEROXIDE** poses sense organ toxicity hazards.

76.     That **PROPYLENE GLYCOL** poses sense organ toxicity hazards.

77.     That Defendant's cocktail of ultra hazardous or poisonous chemicals listed above, contained in Defendant's products, exposes Plaintiffs' Decedent and consumers to these harmful chemical that causes "organ" toxicity hazards in users and serious and significant or catastrophic health consequences or harm.

78.     That **P-PHENYLENEDIAMINE** is an ingredient in chemical group acting as nitrosating agents that can form carcinogenic nitrosamine compounds, on the skin or in the body after absorption, if mixed with amines. It is also a coal tar hair dye, with no cancer studies identified in published literature; epidemiology studies link long-time use of coal tar hair dyes to bladder cancer potentially mutate, or damage, cellular DNA in ways that may lead to cancer.

79. That **M-AMINOPHENOL** is a coal tar hair dye, with no cancer studies identified in published literature; epidemiology studies link long-time use of coal tar hair dyes to bladder cancer.

80. That **PHENYL METHYL PYRAZOLONE** is a coal tar hair dye, with no cancer studies identified in published literature; epidemiology studies link long-time use of coal tar hair dyes to bladder cancer.

81. That **2, 4-DIAMINOPHENOXYETHANOL HCL** is a coal tar hair dye, with no cancer studies identified in published literature; epidemiology studies link long-time use of coal tar hair dyes to bladder cancer.

82. That **HYDROGEN PEROXIDE** possibly causes cancer in humans.

83. That **RESORCINOL** is an endocrine disruptor(s), raising concern for increased risks for certain cancers.

84. That Defendant's cocktail of ultra hazardous poisonous chemicals listed above, contained in Defendant's products, exposes Plaintiffs' Decedent and consumers to the risk of developing cancer in users. Therefore, it causes serious and significant or catastrophic health consequences or harm to users.

85. That **PROPYLENE GLYCOL** (penetration enhancer) alter(s) skin structure, allowing other chemicals to penetrate deeper into the skin, increasing the amounts of other chemicals to reach the bloodstream.

86. That Defendant's cocktail of ultra hazardous or poisonous chemicals listed above, contained in Defendant's products, exposed Plaintiffs' Decedent and consumers to these harmful chemicals that penetrate the bloodstream. That the penetration enhancer acts or is equivalent to taking the ultra hazardous toxic chemicals internally. That Defendant's cocktail of poisonous chemicals causes serious and significant or catastrophic health consequences or harm.

87. The term "cosmetic" means (1) articles intended to be rubbed, poured, sprinkled, or sprayed on, introduced into, or otherwise applied to the human body or any part thereof for cleansing, beautifying, promoting attractiveness, or altering the appearance *(21 USC § 321* (i)). That nothing within the meaning says anything about ultra hazardous toxic chemicals penetrating the bloodstream. That once the drug or chemical is taken internally or penetrates the blood system, it falls under the FDA review and should be treated like a drug and be subject to filing requirements.

88. That **P-PHENYLENEDIAMINE** potentially harmful to the immune system.

89.     That Defendant's cocktail of ultra hazardous or poisonous chemicals listed above, contained in Defendant's product, exposes Plaintiffs' Decedent and consumers to these chemicals that are harmful to the immune system. That Defendant's cocktail of poisonous chemicals causes serious and significant or catastrophic health consequences or harm.

90.     That **ALCOHOL DENAT** (Alcohol Denatured) poses neurotoxicity hazards.

91.     That **M-AMINOPHENOL** is a coal tar hair dye and poses neurotoxicity hazards.

92.     That **P-PHENYLENEDIAMINE** poses neurotoxicity hazards.

93.     That **RESORCINOL** poses neurotoxicity hazards.

94.     That **HYDROGEN PEROXIDE** poses neurotoxicity hazards.

95.     That Defendant's cocktail of ultra hazardous poisonous chemicals listed above, contained in Defendant's products, exposed Plaintiffs' Decedent and consumers to these harmful chemicals that causes neurotoxicity hazards in users and serious and significant or catastrophic health consequences or harm.

96.     That **P-PHENYLENEDIAMINE** is a coal tar hair dye that cause immune system response resulting in asthma attacks.

97.     That Defendant's cocktail of ultra hazardous or poisonous chemicals listed above, contained in Defendant's products exposed Plaintiffs' Decedent and consumers to these harmful chemicals that causes asthma in users and serious and significant or catastrophic health consequences or harm.

98.     That **AMMONIUM HYDROXIDE** poses respiratory toxicity hazards.

99.     That **M-AMINOPHENOL** is a coal tar hair dye and poses respiratory toxicity hazards.

100.    That **P-PHENYLENEDIAMINE** is a coal tar hair dye and poses respiratory toxicity hazards.

101.    That **HYDROGEN PEROXIDE** poses respiratory toxicity hazards.

102.    That Defendant's cocktail of poisonous chemicals listed above, contained in Defendant's products, have exposed Plaintiffs' Decedent and consumers to these harmful chemicals that causes respiratory toxicity hazards and serious and significant or catastrophic health consequences or harm.

103. That **RESORCINOL** is an endocrine disruptor(s), raising concern for impaired fertility or development.

104. That **ALCOHOL DENAT** (Alcohol Denatured) present risks to human reproduction and development linked to potential for reduced fertility or reduced chance for a healthy, full-term pregnancy.

105. That **M-AMINOPHENOL** is a coal tar hair dye and present risks to human reproduction and development linked to potential for reduced fertility or reduced chance for a healthy, full-term pregnancy.

106. There is no question that Defendant's cocktail of ultra hazardous or poisonous chemicals listed above, contained in Defendant's products has exposed Plaintiffs' Decedent to these harmful chemicals and causes pregnant women consumers to birth defects and reproductive or developmental harm in users. That the ultra hazardous toxic chemicals, causes serious and significant or catastrophic health consequences or harm.

107. That it is the Plaintiffs' belief that Defendant's secret formula contained in the hair dye is also ultra hazardous or poisonous chemicals that causes serious and significant or catastrophic health consequences or harm.

108. That it is indispensable to have the names of the chemicals submitted to Plaintiffs for their examination. That Plaintiffs are not asking for Defendant to divulge information in respect to specific method of preparing the formula, such as percentage or proportions or the process of compounding the ingredients. That Plaintiffs need to research each chemical to find out their health effects, so that this court could further evaluate the factual allegations against Defendant's products.

109. That **SODIUM STANNATE** has not been assessed for safety by the Defendant or the cosmetic industry's Cosmetics Ingredient Review board.

110. That **TETRA SODIUM PYROPHOSPHATE** has not been assessed for safety by the Defendant or cosmetic industry's Cosmetics Ingredient Review board.

111. That **ALCOHOL DENAT** (Alcohol Denatured) has not been assessed for safety by the Defendant or the cosmetic industry's Cosmetics Ingredient Review board.

112. That **HYDROGEN PEROXIDE** has not been assessed for safety by the Defendant or the cosmetic industry's Cosmetics Ingredient Review board.

113. That **TRIDECETH-12** has not been assessed for safety by the Defendant or the cosmetic industry's Cosmetics Ingredient Review board.

114. That **2, 4-DIAMINOPHENOXYETHANOL HCL** has not been assessed for safety by the Defendant or the cosmetic industry's Cosmetics Ingredient Review board

115. That **ERYTHORBIC ACID** has not been assessed for safety by the Defendant or the cosmetic industry's Cosmetics Ingredient Review board.

116. That **CETEARYL ALCOHOL** has not been assessed for safety by the Defendant or the cosmetic industry's Cosmetics Ingredient Review board.

117. That **TRIDECETH-2 CARBOXAMIDE MEA** has not been assessed for safety by the Defendant or the cosmetic industry's Cosmetics Ingredient Review board.

118. That Defendant's cocktail of ultra hazardous or poisonous chemicals listed above, contained in Defendant's products exposed Plaintiffs' Decedent and consumers to unknown harm that are sure to cause serious and significant or catastrophic health consequences or harm.

119. The implementing regulations require the placement of a warning label on cosmetic products for which adequate substantiation of safety has not been obtained *(21 U.S.C.A. § 362*(a), (c)). That 21 C.F.R. 740.10(a) the regulation provides as follows:

   a. Each ingredient used in a cosmetic product and each finished cosmetic product shall be adequately substantiated for safety prior to marketing. Any such ingredient or product whose safety is not adequately substantiated prior to marketing is misbranded unless it contains the following conspicuous statement on the principal display panel:

   **Warning:** The safety of this product has not been determined

120. That the foregoing ingredients have not been proven to be safe, and the products have failed to bear the required warning label. Therefore, the products are misbranded and are subject to voluntary recall, injunction or seizure *(21 U.S.C.A. § 362, 21 U.S.C.A. § 332, 21 U.S.C.A. § 334,* 21 C.F.R. § 7.40, and 21 C.F.R. § 7.45. Also, Defendant is in violation of *21 USC § 321* (n)) since the product is misbranded and fails to reveal the factual material thereto

121. That **M-AMINOPHENOL** is a coal tar hair dye and considered toxic in one or more government assessments.

122. That **P-PHENYLENEDIAMINE** is considered toxic in one or more government assessments.

123. That **RESORCINOL** is considered toxic in one or more government assessments.

124. That **HYDROGEN PEROXIDE** is considered toxic in one or more government assessments.

125. That Defendant's cocktail of ultra hazardous or poisonous chemicals listed above, contained in Defendant's products, exposed Plaintiffs' Decedent and consumers to ultra hazardous toxic chemicals that causes serious and significant or catastrophic health consequences or harm.

126. That **M-AMINOPHENOL** is a coal tar hair dye and poses potential risks to wildlife and the environment through excretion and disposal of cosmetics resulting in contamination of water, air, or soil.

127. That **P-PHENYLENEDIAMINE** is a coal tar hair dye and poses potential risks to wildlife and the environment through excretion and disposal of cosmetics resulting in contamination of water, air, or soil.

128. That **RESORCINOL** poses potential risks to wildlife and the environment through excretion and disposal of cosmetics resulting in contamination of water, air, or soil.

129. That **HYDROGEN PEROXIDE** poses potential risks to wildlife and the environment through excretion and disposal of cosmetics resulting in contamination of water, air, or soil.

130. That **OLEYL ALCOHOL** poses potential risks to wildlife and the environment through excretion and disposal of cosmetics resulting in contamination of water, air, or soil.

131. That Defendant's cocktail of ultra hazardous or poisonous chemicals listed above, contained in Defendant's products, exposed Plaintiffs' Decedent and consumers to hazardous toxic chemicals and exposes our environment with contamination. That Defendant's cocktail of poisonous chemicals also causes serious and significant health consequences.

132. That **HYDROGEN PEROXIDE** is a chemical that may pose dangers in occupational settings, or that merit safety and handling warnings.

133. That Defendant's cocktail of ultra hazardous or poisonous chemicals listed above, contained in Defendant's products, exposed Plaintiffs' Decedent, consumers and children to dangerous chemical properties relative to safety and handling.

134. That Defendant is intentionally and willfully negligent in that it does not provide a safety cap on its product for the safety of children.

135. That Defendant is in violation of C.F.R. § 700.25 Tamper-resistant packaging requirements for cosmetic products since their "liquid" products do not have tamper-resistant to safeguard children against the ultra hazardous chemicals that Defendant is marketing and distributing through retail stores throughout the United States.

136. That no person in the course of doing business shall knowingly and intentionally expose any individual to a chemical known to cause cancer or reproductive toxicity without first giving clear and reasonable warning to such individual.

137. That **PROPYLENE GLYCOL** stored in containers may explode in heat or in fire.

138. That **P-PHENYLENEDIAMINE** is combustible and gives off irritating or toxic fumes or gases in a fire.

139. That Defendant's cocktail of poisonous chemicals listed above, contained in Defendant's products exposes consumer users to flammable materials and that may, if ignited, cause serious and significant or catastrophic health consequences or harm to user.

140. That science can provide considerable information about the long-term risks a chemical poses to human health and that Plaintiffs are certain that Defendant, after numerous decades have by now determined the scientific uncertainties regarding Defendant's chemical toxicity in their products by conducting a "comprehensive preventable" safety testing. That this comprehensive level of research consists of a series of studies sufficient to resolve most remaining scientifically answerable questions regarding the extent of the hazard and in order to obtain a full assessment. Yet, Defendant has refused to properly warn the public at large of the health hazard of their ultra hazardous toxic products and fraudulently concealed the serious and significant health consequences or harm of their product.

141. That the responsibility is that of the manufacturers, in this case Defendant, who is best able to conduct research on preventable uncertainties regarding the long-term safety of their products and by-products because they, without question, have superior and exclusive access to the information needed to conduct these tests. Further, Defendant is also in the best position to compile the underlying information needed to evaluate the long-term safety of their product.

142. That Defendant has superior access and control of critical information and therefore, this court must apply in this case **res ipsa loquitur** since Defendant is negligent due to the fact that defendant is in the best position to produce exculpatory information.

143. In conclusion, a consumer buys a product after evaluating the risks in its use. However, the consumer is not on an equal footing with the manufacturer who is in a unique position to know the specific risks involved.

144. That Defendant for numerous decades have been aware of the dangerous effect of the hazardous chemical contained in Soft Sheen Carson® Dark and Lovely Color and have failed in their responsibility to inform the public-at-large of the hazardous effects of these chemicals. One particular chemical that Defendant has been aware since 1933 is p-phenylenediamine, which is the chemical that have been linked to chemical leukoderma.

145.    That In 1933, more than 12 women were blinded and one woman died from using a permanent mascara called Lash Lure. That Lash Lure contained P-phenylenediamine, an untested chemical in 1933 and untested 2005. At the time, there were no regulations to ensure the safety of products other than an allergy test approved as per *21 USC § 361* which is unappropriate since the problem with this hazardous chemical is known to cause liver (dysfunction) and kidney disorder, gastrointestinal or liver hazards, etc. In addition, P-phenylenediamine is known to cause horrific blisters, abscesses, and ulcers on the face, eyelids, and eyes of its users.

146.    These dyes have repeatedly been cited in scientific literature as capable of causing serious reactions when placed in direct contact with the eye. Yet, Defendant has continued to use P-phenylenediamine in their hair dye products.

147.    That in addition, P-phenylenediamine dyes have a long history of causing urticaria, contact dermatitis, leukoderma, and anaphylaxis.

148.    That Paraphenylenediamine (PPD) is a chemical substance that is not only used as a permanent hair dye but have also been found in textile, fur dyes, dark coloured cosmetics, temporary tattoos, photographic developer and lithography plates, photocopying and printing inks, black rubber, oils, greases and gasoline.

149.    Reaction caused by the use of hair dye in mild cases usually only involves dermatitis to the upper eyelids or the rims of the ears. In more severe cases, there may be marked reddening and swelling of the scalp and the face. The eyelids may completely close and the allergic contact dermatitis reaction may become widespread.

150.    Other immediate reactions to PPDA, are contact urticaria, angioedema, and anaphylaxis, that have been reported from hair dye use.

## ALTERNATIVE DESIGN OR MANUFACTURING: L'OREAL(R) SOFT SHEEN CARSON® DARK AND LOVELY COLOR

151.    That the Defendant could have manufactured the hair coloring using normal Henna crushed powder of leafs from plant Lawsnia inermis which give color to hair when applied, instead it manufactured the products using ultra hazardous or toxic poisonous chemicals.

152.    If a product is designed in such a way that it is foreseeable that injury could result, and if the risk of injury could have been reduced by an alternative design, then a product is said to be defective in its design.

153.    That Defendant's products are in fact defective in a number of ways: (1) the product is marketed with inadequate instructions and warnings as to foreseeable risks, and therefore it has a marketing defect, (2) the product is manufactured with a flaw, i.e., a manufacturing defect, (3) the products are designed in such a way that it is foreseeable that injury could result, and (4) the

risk of injury could be reduced by an alternative design. That Defendant's products are unsafe and dangerous and are not capable of being made safe for its intended and ordinary use.

154. An alternative in accomplishing the same hair color results, Defendant should manufacture the hair dye using Henna, a natural ingredient or less harmful than Defendant's ultra hazardous toxic chemicals. The court should consider that Defendant's products are not necessary to human survival and good public health.

## COUNT I: STRICT PRODUCT LIABILITY BASED ON UNSAFE, DEFECTIVE AND "UNREASONABLY DANGEROUS" TOXIC CHEMICAL PRODUCTS

155. Plaintiffs re-allege and incorporate by reference the allegations contained in Paragraph 1 through 153 of this Complaint.

156. That Soft Sheen Carson® Dark and Lovely Color is a defective product manufactured daily, and are "unreasonably dangerous" for its intended use. That the defective product containing ultra hazardous toxic chemicals caused Plaintiffs' Decedent's anaphylactic shock and subsequent death.

157. That Soft Sheen Carson® Dark and Lovely Color is "unreasonably dangerous" and defective products that are affirmed by the absence of an adequate warning and instructions alerting the user of the danger in using the product.

158. That Defendant as a manufacturer owes a duty to Plaintiffs' Decedent and consumers under the doctrine of strict liabilities since it has control and discretion over the production of their defective products and warning labels.

159. That strict liability allows Plaintiffs to recover against the Defendant's products since the product is a defective condition and is "unreasonably dangerous" and caused harm to the Plaintiffs' Decedent. It is well settled that dangerous products can be considered defective for strict liability purposes if it is distributed without sufficient warnings to notify the ultimate user of dangers inherit in the product.

160. That the Defendant manufacturer breached its duty to Plaintiffs' Decedent and consumers in that:

   a. Defendant's products were in a defective condition at the time of purchase;
   b. The products were "unreasonably dangerous" to the Plaintiffs' Decedent;
   c. The products were the direct cause to the injuries sustained by Plaintiffs' Decedent which caused her death.

WHEREFORE JANE CRAIG, CLARENCE MORRIS, JR., BETTY MORRIS, AARON MORRIS, ATHENA MORRIS, RICKY MORRIS, ANTHONY MORRIS, STACEY MORRIS,

TYRONE MORRIS, Individually, and as Administrators of the Estate of CORNELIA MORRIS, Deceased, ask that a judgment be entered against the Defendants, in a fair and just amount in excess of fifty thousand dollars ($50,000).

## COUNT II: STRICT PRODUCT LIABILITY BASED DEFECTIVE OR INADQUATE FAULTY AND DECEPTIVE WARNING LABEL

161. Plaintiffs re-allege and incorporate by reference the allegations contained in Paragraph 1 through 159 of this Complaint.

162. That Plaintiffs' Decedent and consumers have a right to be properly apprised of any risk in using any product sold. It is only then can Plaintiff and consumers could make an informed decision as to whether the product is safe for them to use as it may relate to their medical condition and/or family health history.

163. That the product is unreasonably dangerous and provides no warning against toxicity.

164. That Defendant's product warning label is not thorough and conspicuous. That the product, Soft Sheen Carson® Dark and Lovely Color, fails to warn about chemicals that can trigger anaphylactic shock.

165. That Soft Sheen Carson® Dark and Lovely Color does not have the warning declaration that the product can cause cancer, damage to the liver (dysfunction), kidney (disorders), lungs, asthma, birth defects, anaphylactic shock, and death on its box, therefore, the ingredients declarations do not appear in prominence and conspicuousness as to render it likely to be read and understood by ordinary individuals under normal conditions of purchase (See 21 CFR § 701.3; 21 C.F.R. § 701.2).

166. That Soft Sheen Carson® Dark and Lovely Color product does not have the necessary warning that corresponds with the product's ultra hazardous toxic chemicals.

167. That the Plaintiffs and public at large best interest will be adequately served by a suitable warning as per *21 USC § 336*, such as:

    a. Warning: That "Keep out of reach of children"
    b. Warning: Contains chemicals that penetrate your skin and that can enter your blood system. The chemicals in this product have been known to cause in laboratory animals, anaphylactic shock, death, chemical leukoderma, cancer, bladder, "organ" cardiovascular or blood toxicity hazards, gastrointestinal or liver toxicity hazards, kidney toxicity hazards, problems with lungs and airways (lung sensitization), "eye damage" such as stop children eyes from

developing properly and cataracts to develop in adults, severe digestive tract irritation, ulceration of nasal tissue, unconsciousness, death, immunotoxicity hazards, neurotoxicity hazards, asthma, birth defects and reproductive or developmental harm, respiratory toxicity hazards, itching, burning, scaling, hives, and blistering of skin.

    c.  Warning: There are a total of twenty four chemicals in this product that has not been assessed for safety by the cosmetic industry.

    d.  Warning: DANGER FLAMMABLE/COMBUSTIBLE, use only with adequate ventilation, keep away from sources of ignition.

168. That the product violates C.F.R. § 740.18 Coal tar hair dyes posing a risk of cancer and C.F.R. § 740.2 since the products do not list the mandatory below warning on their products prominently and conspicuously in bold type lettering to render it likely to be read and understood by Plaintiffs' Decedent and the ordinary individual, i.e., consumers, under customary conditions of purchase and use.

169. That C.F.R. § 740.18 mandates the following label on coal tar hair dyes:

    a.  **Warning: Contains an ingredient that can penetrate your skin and has been determined to cause cancer in laboratory animals.**

170. That the product violates C.F.R. § 740.1 since the product's labels does not bear any warning on their ultra hazardous chemicals to prevent health hazards that may be associated with the product.

171. That Soft Sheen Carson® Dark and Lovely Color does not have the warning declaration on its box (21 CFR § 701.3). That the law requires that the ingredient declaration be conspicuous so that it is likely to be read at the time of purchase (21 C.F.R. § 701.2).

172. That even if Soft Sheen Carson® Dark and Lovely Color had the proper warning, cosmetics with ingredients that are unsafe for the uses indicated in the package direction meet the prerequisites for a recall (21 C.F.R. § 7.40, 21 C.F.R. § 7.45).

173. That Defendant has not met the federal labeling requirements since it has negated on the required warning (21 CFR § 191.102 (1965)).

WHEREFORE AARON MORRIS, Individually, and as Special Administrator of the Estate of CORNELIA MORRIS, Deceased, asks that a judgment be entered against the Defendants, in a fair and just amount in excess of fifty thousand dollars ($50,000).

## COUNT III: STRICT PRODUCT LIABILITY BASED ON DEFECTIVE OR INADQUATE AND DECEPTIVE INSTRUCTIONS ON REMOVING ULTRA HAZARDOUS TOXIC CHEMICALS AND RISK INVOLVED IN USING PRODUCTS

174. Plaintiffs re-allege and incorporate by reference the allegations contained in Paragraph 1 through 172 of this Complaint.

175. That in addition to Defendant not apprising Plaintiffs' Decedent of the ultra hazardous toxic chemicals and risk involved in using Soft Sheen Carson® Dark and Lovely Color, the instructions contained inside the box are inadequate and poses a danger to the user of the product.

176. That the chemicals contained in Soft Sheen Carson® Dark and Lovely Color are dangerous and this product does not provide visual instructions on how to rinse the hair after applying the ultra hazardous toxic chemicals, and the instructions are inadequate and deceptive and poses a danger to the user of the product.

177. That section 4 of the instruction guide does not request that you wear gloves when rinsing the hair. Also, section 4 does not instruct the person using the product to be sure to close their eyes and keep them closed during the rinse process. The written instruction only states:

> "when processing time is up, add a little lukewarm water to your hair and work the color mixture into a lather. Rinse thoroughly until water runs clear. If color mixture gets into your eyes, rinse out quickly with water".

178. That Soft Sheen Carson® Dark and Lovely Color is "unreasonably dangerous" and lacks adequate instructions. To be effective, the instructions must be clear and not confusing and have a purpose to help the consumers use the product in a safe manner.

179. That Soft Sheen Carson® Dark and Lovely Color fails to provide proper instruction on how to remove the hazardous chemical and warn about chemicals that can trigger anaphylactic shock, death, and effect organs, such as kidney, liver, heart, lungs, etc.

180. That Defendant, the manufacturer of Soft Sheen Carson® Dark and Lovely Color, has a legal duty to provide adequate instructions for the safe use of its product, but has intentionally since the development of the product, has not provided adequate instructions. That since such warnings are not present, the Defendant is liable for injuries caused to Plaintiffs' Decedent by the products.

181. Further, Defendant, as the manufacturer of the products have a duty to perform safety tests to determine what written instructions should be included as part of the products. In contrast, Defendant provides defective or inadequate instructions on removing the ultra hazardous toxic chemicals.

182.    That the Defendant did not provide clear instructions on how to remove the products from the hair thorough and conspicuous.

WHEREFORE JANE CRAIG, CLARENCE MORRIS, JR., BETTY MORRIS, AARON MORRIS, ATHENA MORRIS, RICKY MORRIS, ANTHONY MORRIS, STACEY MORRIS, TYRONE MORRIS, Individually, and as Administrators of the Estate of CORNELIA MORRIS, Deceased, ask that a judgment be entered against the Defendants, in a fair and just amount in excess of fifty thousand dollars ($50,000).

## COUNT IV: DEFENDANT'S NEGLEGENCE LIABILITY BASED ON UNSAFE, DEFECTIVE AND "UNREASONABLY DANGEROUS" TOXIC CHEMICAL PRODUCTS

183.    Plaintiffs re-allege and incorporate by reference the allegations contained in Paragraph 1 through 181 of this Complaint.

184.    That Defendant's product, Soft Sheen Carson® Dark and Lovely Color is a defective product manufactured daily that is "unreasonably dangerous" for its intended use which caused Plaintiffs' Decedent's anaphylactic shock and death resulting from Defendant's defective product containing ultra hazardous toxic chemicals.

185.    That Soft Sheen Carson® Dark and Lovely Color is "unreasonably dangerous" and defective is affirmed by the absence of an adequate warning and instructions alerting the user of the danger in using the Defendant's product.

186.    That Defendant as a manufacturer owed a duty to Plaintiffs' Decedent and consumers and has been negligent, since it has control and discretion over the production of their defective products and labels, and been purposely silent on the warning label it had to display on their products.

187.    That (1) the Defendant's product was in a defective condition on date of purchase, (2) that the product was "unreasonably dangerous" to the Plaintiffs' Decedent, and (3) that the product was the cause of the direct injuries sustained by Plaintiffs' Decedent.

WHEREFORE AARON MORRIS, Individually, and as Special Administrator of the Estate of CORNELIA MORRIS, Deceased, asks that a judgment be entered against the Defendants, in a fair and just amount in excess of fifty thousand dollars ($50,000).

## COUNT VI: DEFENDANT'S NEGLIGENCE LIABILITY BASED ON DEFECTIVE OR INADQUATE FAULTY, AND DECEPTIVE WARNING LABEL

188.    Plaintiffs re-allege and incorporate by reference the allegations contained in Paragraph 1 through 186 of this Complaint.

189.    That Defendant did not apprise Plaintiffs' Decedent and the public-at-large of any risk in using their product even though the Defendant has a duty to do so under law. It is only then that consumers can make an informed decision as to whether the product is safe for them to use based on their medical condition or family history.

190.    That Defendant failed to insert the necessary alarming warning labels that correspondence with the product (Soft Sheen Carson® Dark and Lovely Color), ultra hazardous toxic chemicals. That Defendant's product is misbranded since it failed to include the required information in such a way to be understood under customary conditions of purchase (See *21 U.S.C.A. § 362*).

191.    That Defendant's label statements, as required by regulation, must be placed on the label with such prominence and conspicuousness that they are readily noticed and understood by consumers under customary conditions of purchase (See 21 C.F.R. § 701.2). That the corresponding label to Soft Sheen Carson® Dark and Lovely Color is:

   a.  Warning: That "Keep out of reach of children"
   b.  Warning: Contains chemicals that penetrate your skin and that can enter your blood system. The chemicals in this product have been known to cause in laboratory animals, chemical leukoderma, cancer, bladder, "organ" cardiovascular or blood toxicity hazards, gastrointestinal or liver toxicity hazards, kidney toxicity hazards, problems with lungs and airways (lung sensitization), anaphylactic shock, "eye damage" such as stop children eyes from developing properly and cataracts to develop in adults, severe digestive tract irritation, ulceration of nasal tissue, unconsciousness, death, immunotoxicity hazards, neurotoxicity hazards, asthma, birth defects and reproductive or developmental harm, respiratory toxicity hazards, itching, burning, scaling, hives, and blistering of skin.
   c.  Warning: There are a total of twenty four chemicals in this product that has not been assessed for safety by the cosmetic industry.
   d.  Warning: DANGER FLAMMABLE/COMBUSTIBLE, use only with adequate ventilation, keep away from sources of ignition.

192.    That even if Defendant had the proper warning on their product Soft Sheen Carson® Dark and Lovely Color, products or cosmetics with ingredients that are unsafe for the uses indicated in the package direction meet the prerequisites for a recall (See 21 C.F.R. § 7.40, 21 C.F.R. § 7.45).

193.    That Defendant designed, manufactured, marketed, sold, and placed into the stream of commerce Soft Sheen Carson® Dark and Lovely Color knowing that it would cause the following:

a. Anaphylactic shock, death, cancer, bladder, "organ" cardiovascular or blood toxicity hazards, gastrointestinal or liver toxicity hazards, kidney toxicity hazards, problems with lungs and airways (lung sensitization), "eye damage" such as stop children eyes from developing properly and cataracts to develop in adults, severe digestive tract irritation, ulceration of nasal tissue, unconsciousness, death, immunotoxicity hazards, neurotoxicity hazards, asthma, birth defects and reproductive or developmental harm, respiratory toxicity hazards, itching, burning, scaling, hives, and blistering of skin.

194. That despite Defendant's actual knowledge of the detrimental side effects of Soft Sheen Carson® Dark and Lovely Color the Defendant failed to warn adequately and sufficiently the Plaintiff and the public at large of the harmful and detrimental side effects of its products.

195. That Defendant intentionally either did not test or adequately test the chemicals in Soft Sheen Carson® Dark and Lovely Color, and still manufactured, marketed, and distributed the ultra hazardous toxic chemicals.

196. That Defendant published false and misleading information about the safety and potential adverse side effects of Soft Sheen Carson® Dark and Lovely Color.

197. That Defendant systematically failed to provide adequate warning notice to the public at large, Plaintiffs' Decedent being part of the public at large, under age children with proper instructions in how to remove the ultra hazardous toxic chemicals Soft Sheen Carson® Dark and Lovely Color from the hair after application if an allergic reaction were to occur.

198. That the Defendant knows that the warning must clearly alert the user to avoid certain unsafe uses of the product and that sufficiency of a warning is dependent upon both the language used and the impression that the language is calculated to make upon the mind of the average user of the product. In this case that the warning does not in any form convey the risk of the danger associated with Defendant's product.

199. That Defendant's actions, as alleged, constitute violations of statutory and regulatory provisions.

200. That Defendant is negligent since:

a. The Defendant did not provide due care to Plaintiffs' Decedent, which is a duty which Defendant is obligated to provide, i.e., Defendant is bound to act as a reasonably prudent person under the circumstances;

b. the Defendant breached that duty;

c. the Defendant's breach was the legal and proximate cause of injury to the Plaintiffs' Decedent;

d. the Plaintiffs' Decedent suffered anaphylactic shock and death as a result of the Defendant's actions not to inform the Plaintiff of the products ultra hazardous toxic chemicals.

201. That Defendant was negligent in releasing the unreasonably dangerous products into the market.

202. That Defendant with intention and for economical gains did not act with reasonable care to ensure the safety of the product and continue to manufacture the "unreasonably dangerous" defective product (Soft Sheen Carson® Dark and Lovely Color).

WHEREFORE AARON MORRIS, Individually, and as Special Administrator of the Estate of CORNELIA MORRIS, Deceased, ask that a judgment be entered against the Defendants, in a fair and just amount in excess of fifty thousand dollars ($50,000).

## COUNT VII: DEFENDANT'S NEGLIGENCE LIABILITY BASED ON FRAUDULENT CONCEALMENT OF ULTRA HAZARDOUS TOXIC CHEMICALS AND THEIR ADVERSE EFFECTS ON HUMANS

203. Plaintiffs re-allege and incorporate by reference the allegations contained in Paragraph 1 through 201 of this Complaint.

204. That Defendant at all times in designing, manufacturing, marketing, distributing and selling Soft Sheen Carson® Dark and Lovely Color knew that this product was and is still today hazardous to humans.

205. That at all times in marketing Soft Sheen Carson® Dark and Lovely Color, the Defendant falsely and fraudulently represented, expressly or impliedly to Plaintiff, and the public at large, not limited to the market at large, that Soft Sheen Carson® Dark and Lovely Color are safe to use. That Defendant suppressed and concealed facts that Soft Sheen Carson® Dark and Lovely Color is harmful, dangerous and deleterious to the health of humans. That the Defendant knew of these dangerous propensities when it designed, manufactured, marketed, sold and distributed Soft Sheen Carson® Dark and Lovely Color.

206. That when Defendant has published and disseminated information publicly and in publications which represented Soft Sheen Carson® Dark and Lovely Color as well-suited, safe and highly effective for its intended use.

207. That the misrepresentations, suppressions, and failures to disclose information were made then and are still being made by the Defendant with the intent to induce Plaintiffs' Decedent and the public at large and the market to purchase and use Soft Sheen Carson® Dark and Lovely Color.

208. That the Plaintiffs' Decedent relied on the Defendant's misrepresentations as well as the absence of adverse information in purchasing and using Soft Sheen Carson® Dark and Lovely Color.

209. That Defendant has continued at all times to falsely and fraudulently misrepresent, and suppress, the dangerous propensities and deleterious ultra hazard toxic chemicals of Soft Sheen Carson® Dark and Lovely Color.

210. That Plaintiffs' Decedent at the time of purchase and use of Defendant's products was ignorant of the existence of the facts which Defendant misrepresented, suppressed and failed to disclose. That if the Plaintiffs' Decedent had been aware of the existence of the true facts of these chemicals, the Plaintiffs' Decedent would not have ever purchased or used Soft Sheen Carson® Dark and Lovely Color and would have not suffered the injuries and resultant death stated in this complaint herein.

211. That as a direct result of Defendant's concealment suppression of facts relative to the ultra hazardous toxic chemical and failure to disclose, and the continued manufacturing, sale and marketing of Soft Sheen Carson® Dark and Lovely Color, the Plaintiffs' Decedent was directly and materially harmed and injured. Further, the public at large continues to be exposed to the ultra hazardous toxic chemicals.

212. That a layman, like Plaintiffs' Decedent, has no way of knowing about the ultra hazardous toxic chemical that are harmful to their health or could cause anaphylactic shock and death. Even if the average person took upon the task of researching every toxic chemical, he or she, would not be able to analyze the impact of the combined mixed chemicals that results in impurities that may cause other dangers.

213. That Defendant at all times in designing, manufacturing, marketing, distributing and selling Soft Sheen Carson® Dark and Lovely Color knew that the product is harmful to human kind and can cause anaphylactic shock and death.

214. That Defendant falsely and fraudulently represented expressly or impliedly to Plaintiffs' Decedent, and the public at large that Soft Sheen Carson® Dark and Lovely Color are safe to use. That the Defendant suppressed and concealed facts that Soft Sheen Carson® Dark and Lovely Color could be harmful, dangerous and deleterious to the health of humans and could cause death. That the Defendant knew of these dangerous propensities when it designed, manufactured, marketed, distributed and sold Soft Sheen Carson® Dark and Lovely Color.

215. That Defendant's acts and omissions in this complaint to this court were committed by Defendant with indifference to the rights of the Plaintiffs and

Plaintiffs' Decedent and the public at large and were intentionally carried out to maximize the sale and use of Soft Sheen Carson® Dark and Lovely Color.

216. That Defendant concealed the toxic hazard chemicals in the products from the Plaintiffs' Decedent, thereby causing the Plaintiffs' Decedent toxic and fatal injury.

217. That a fiduciary relationship is not a required element of the cause of action concealment against Defendant since it had a duty to disclose the toxic chemical hazards that effects health as established by Federal Law Consumer Fraud Act and other federal laws contained in this complaint. That the legislature designed the Consumer Fraud Act to expand consumers' rights beyond the common law to eliminate all forms of deceptive and unfair business practices and to provide appropriate relief to consumers.

218. That no person in the course of doing any business shall knowingly and intentionally expose any individual to any chemicals known to cause cancer or reproductive toxicity without first giving clear and reasonable warning to such individual.

219. That: (1) The Defendant concealed or suppressed material facts; (2) Defendant had a duty to disclose the medical and scientific information about the ultra hazardous toxic chemicals to the Plaintiffs' Decedent; (3) Defendant intentionally concealed or suppressed the toxic hazard of the product with the intent to defraud the Plaintiffs' Decedent and induce the Plaintiffs' Decedent to use its products); (4) Ignorance of the hazard: Plaintiff was unaware of the facts and would not have used Soft Sheen Carson® Dark and Lovely Color had Plaintiffs' Decedent knew of the concealed or suppressed facts; and (5) As a result of the concealment or suppression of the facts of Defendant's products, Soft Sheen Carson® Dark and Lovely Color, the Plaintiffs' Decedent sustained anaphylactic shock which caused her death.

220. That Defendant's intentional and bad faith perversion of the truth about their products induced Plaintiffs' Decedent to reliance upon and part with the cost of the products which are ultra hazardous toxic chemicals that caused the Plaintiffs' decedent's anaphylactic shock and death.

221. That Defendant has used the 48 hour Patch test for allergic sensitivity to hair dyes for numerous decades to circumvent the health laws and to cheat the public at large by perpetrating the product may be allergic only to some, but not the majority of the public at large. That Defendant through lobbyist has managed over the years to avoid having to inform the public at large about Defendant's ultra hazardous toxic chemicals of its products.

222. That Defendant's fraud to the public at large, Plaintiffs' Decedent being part of the public at large, is contrary to legal or equitable duty, trust, or confidence

and is contrary to good conscience and operates in disregards to health. That Defendant's fraudulent act breached honesty, integrity, and moral turpitude.

223. That Defendant is in violation of *(18 USC § 1001)* since it knowingly and willfully concealed fraudulently the ultra hazardous toxic chemicals of its products.

224. That Defendant has ignored and has failed to act upon medical and scientific data indicating that their hair dye products are hazardous to the health of humans. Thereby, Defendant has engaged in false and deceptive conduct in their marketing of their products in violation of Section 2 of the Consumer Fraud Act.

WHEREFORE AARON MORRIS, Individually, and as Special Administrator of the Estate of CORNELIA MORRIS, Deceased, ask that a judgment be entered against the Defendants, in a fair and just amount in excess of fifty thousand dollars ($50,000).

## COUNT VIII: DEFENDANT'S BREACH OF WARRANTY (LIABILITY)

225. Plaintiffs re-allege and incorporate by reference the allegations contained in Paragraph 1 through 223 of this Complaint.

226. That Defendant failed to represent accurately to Plaintiffs' Decedent, either directly or indirectly, that Soft Sheen Carson® Dark and Lovely Color is unfit and unsafe to use.

227. That Defendant intended that the product to be used by humans and impliedly warranted through the sale, advertising, and/or marketing of Soft Sheen Carson® Dark and Lovely Color that it was fit as a hair dye product.

228. That Plaintiffs' decedent, as a user of Defendant's product, relied upon Defendant's representations, skill, expertise and judgment in assuming that Soft Sheen Carson® Dark and Lovely Color would not only perform its basic functions as warranted, but was safe, and would not cause Plaintiffs' Decedent anaphylactic shock and death.

229. That Defendant breached these implied warranties in that Soft Sheen Carson® Dark and Lovely Color as designed, manufactured, marketed, sold and distributed are ultra hazardous, toxic, and highly harmful to humans.

230. As a direct and proximate result of Defendant's breach of implied warranties of good and merchantable quality and fitness the Plaintiffs' decedent suffered anaphylactic shock and death

231. That every product comes with an implied warranty that it is safe for its intended use. That a defective product that causes injury is not safe for its

intended use and thus constitutes a breach of warranty as per the Uniform Commercial Code (UCC).

232.    That at all times relevant, the Defendant, in order to induce the Plaintiffs' Decedent to purchase and use Soft Sheen Carson® Dark and Lovely Color warranted and represented that its product was the "No. 1 permanent haircolor brand in the US ethnic market" which induced Plaintiffs' Decedent to purchase and use the product. The Defendant's product Soft Sheen Carson® Dark and Lovely Color representations suggest that the product is above average and higher in quality than other haircolors in the US ethnic market and excellent in materials contained.

233.    That Plaintiffs' Decedent purchased and used Soft Sheen Carson® Dark and Lovely Color in her hair in reliance upon Defendant's express warranties and representations.

234.    That Soft Sheen Carson® Dark and Lovely Color, is contrary to Defendant's expressed warranties and representations of the products.

235.    The Defendant breached these expressed warranties in that Soft Sheen Carson® Dark and Lovely Color as designed, manufactured, marketed, distributed or sold is toxic, deleterious, and highly harmful, and does cause anaphylactic shock and death. That Defendant has subjected Plaintiffs' decedent to anaphylactic shock and caused Plaintiffs' decedent's death.

WHEREFORE AARON MORRIS, Individually, and as Special Administrator of the Estate of CORNELIA MORRIS, Deceased, ask that a judgment be entered against the Defendants, in a fair and just amount in excess of fifty thousand dollars ($50,000).

## COUNT IX-SURVIVAL ACTION BASED UPON STRICT LIABILITY, BREACH OF WARRANTY AND NEGLIGENCE

236.    Plaintiffs re-allege and incorporate by reference the allegations contained in Paragraph 1 through 234 of this Complaint.

237.    AARON MORRIS, Individually, and as Special Administrator of the Estate of CORNELIA MORRIS, Deceased, brings this action pursuant to 755 ILCS 5/27-6, commonly referred to as the Survival Act

238.    As a direct and proximate result of one or more of the Defendant's strictly liable acts, breach of warranty and/or negligent acts or omissions, the Plaintiffs' decedent, CORNELIA MORRIS, suffered personal injuries and died from anaphylactic shock caused by her used of the Defendant's unreasonably dangerous product.

239.     As a direct and proximate result, CORNELIA MORRIS, suffered injuries of a personal and pecuniary nature including, but not limited to, pain and suffering, disability, disfigurement, funeral, and related expenses; and CORNELIA MORRIS, would have been entitled to receive compensation from Defendants for these injuries, had she survived.

WHEREFORE AARON MORRIS, Individually, and as Special Administrator of the Estate of CORNELIA MORRIS, Deceased, ask that a judgment be entered against the Defendants, in a fair and just amount in excess of fifty thousand dollars ($50,000).

## COUNT X-WRONGFUL DEATH ACTION BASED UPON DEFENDANT'S NEGLIGENCE, STRICT LIABILITY AND BREACH OF WARRANTY

240.     Plaintiff re-alleges and incorporates by reference the allegations contained in Paragraph 1 through 238 of this Complaint.

241.     The Plaintiffs AARON MORRIS, Individually, and as Special Administrator of the Estate of CORNELIA MORRIS, Deceased, bring this action pursuant to the provisions of 740 ILCS 180/1, et. seq., commonly referred to as the Wrongful Death Act of the State of Illinois.

242.     As a direct and proximate result of one or more of the Defendant's negligent acts and omissions and/or strictly liable acts, and breach of warranty, the Plaintiffs' Decedent, CORNELIA MORRIS, suffered personal injuries and died from anaphylactic shock caused by her use of the Defendant's unreasonably dangerous product.

243.     CORNELIA MORRIS, left surviving her various persons who were their next of kin, including, but not limited to JANE CRAIG, CLARENCE MORRIS, JR., BETTY MORRIS, AARON MORRIS, ATHENA MORRIS, RICKY MORRIS, ANTHONY MORRIS, STACEY MORRIS, and TYRONE MORRIS.

244.     CORNELIA MORRIS's next of kin suffered injuries as a result of decedents' death, including the loss of companionship and society, grief, sorrow and mental anguish. Further, decedents' estate was diminished by virtue of the medical and funeral expenses that were incurred.

WHEREFORE AARON MORRIS, Individually, and as Special Administrator of the Estate of CORNELIA MORRIS, Deceased, asks that a judgment be entered against the Defendants, in a fair and just amount in excess of fifty thousand dollars ($50,000).

Respectfully submitted,

Sturgis E. Chadwick, III
Attorney for Plaintiffs

Law Offices of
**CHADWICK & LAKERDAS**
5300 South Shore Drive, Suite 100
Chicago, IL 60615
(773) 955-1088