IN UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| AARON MORRIS, individually, and as | ) | |
| Special Administrator of the Estate | ) | |
| Of Cornelia Morris, Deceased, | ) | |
| | ) | No.:  1:08-CV-04097 |
| Plaintiff, | ) | |
| VS. | ) | Amount Claimed:  In excess of $50,000 |
| THE LOREAL GROUP, a Foreign Corp., | ) | |
| , L'Oreal, U.S.A., a Delaware Corp., and | ) | |
| d/b/a SOFT-SHEEN CARSON, | ) | |
| WALGREEN CO., and WALGREENS at | ) | |
| 86th & Cottage Grove, Chicago, IL, | ) | |
| | ) | |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT

NOW COMES Plaintiff Aaron Morris, Individually, and as Special Administrator of the Estate Of Cornelia Morris, Deceased, by and through his attorneys, Chadwick & Lakerdas, and herein complains of the Defendant, L'Oreal, USA, d/b/a SOFT-SHEEN CARSON, WALGREEN CO., and WALGREENS at 86th & Cottage Grove, Chicago, IL, as follows:

1. JANE CRAIG, CLARENCE MORRIS, JR., BETTY MORRIS, AARON MORRIS, ATHENA MORRIS, RICKY MORRIS, ANTHONY MORRIS, STACEY MORRIS, TYRONE MORRIS are all adult children of the decedent and are residents of County of Cook, City of Chicago, State of Illinois.

2. AARON MORRIS has previously been appointed Special Administrator Of the Estate Of Cornelia Morris.

3. In July 2006, CORNELIA MORRIS, Deceased, purchased one unit of Soft Sheen-Carson Dark & Lovely hair color in "Natural Black" from a Walgreen's retail store in Cook County, Chicago, IL.

4. On July 10, 2006, CORNELIA MORRIS, Deceased, applied Dark & Lovely, a hair dye, manufactured by and under the Soft Sheen-Carson division of L'Oreal, U.S.A., which is a wholly owned subsidiary of THE LOREAL GROUP, at her home located at 8729 S. Prairie Avenue, Cook County, IL

NOW COMES Plaintiff AARON MORRIS, individually, and as Special Administrator Of The

Chicago, Illinois, and then subsequently suffered anaphylactic shock, was transported to and, ultimately, died at Jackson Park Hospital, 7531 S. Stony Island Ave., Cook County, Chicago, Illinois.

## II. JURISDICTION AND VENUE

5.    That the Defendant, THE L'OREAL GROUP, is a foreign corporation organized under the Laws of France, with its principle place of business at 14, rue Royale, 75008 Paris, France, and doing business as L'OREAL USA, a wholly owned subsidiary of THE L'OREAL GROUP incorporated under the Laws of the State of Delaware, and SOFT SHEEN-CARSON, a division of L'OREAL USA, which are headquartered at 575 5th Avenue, New York, New York, 10017, and registered to do business in the State of Illinois, and may be served with process of this Court on its registered agent, Illinois Corporation Service C, which may be served at 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

6.    That Defendant is a company which has been engaged in the business of manufacturing, selling and distributing hair dye called Dark and Lovely under their Soft Sheen Carson brand.

7.    That Defendant has used the ports, roads and other means of transportation to transport their hair dye products into the State of Illinois and into Cook County where they sell and distribute their products directly or indirectly through distributors to retail stores.

8.    The Defendant is subject to the jurisdiction of this court in that Defendant transacted and continues to transact business by selling their hair dye products to retail stores in the State of Illinois and Cook County, where they have committed and continue to commit the tortious acts as affirmed by the factual allegations contained in this complaint.

9.    The tortious action alleged herein was committed in whole or in part, and affects commerce in, and defendants do business in, Cook County and elsewhere throughout the State of Illinois.

10.    The amount in controversy exceeds $50,000.

## III. STATEMENT OF FACTS

11.    That on or about the latter part of July, 2006, Plaintiffs' Decedent, CORNELIA MORRIS, decided to dye her hair. Plaintiff used Soft Sheen Carson® Dark and Lovely which she had purchased in a retailer in Cook County, Illinois.

12.     That the Plaintiffs' Decedent, CORNELIA MORRIS, was a regular user of Soft Sheen Carson® Dark and Lovely and had used said product several times a year for several years.

13.     That Defendant's product was applied as per the instructions contained within the instruction guide.

14.     That a day after purchasing Defendant's product, Plaintiffs' Decedent, CORNELIA MORRIS, read Defendant's instruction guide and performed an Allergy and Strand Test 48 hours before coloring.

15.     That Plaintiffs' Decedent, CORNELIA MORRIS, examined the test area and found no reaction to the area where the color solution was applied.

16.     That Plaintiffs' Decedent, CORNELIA MORRIS, then applied the Soft Sheen Carson® Dark and Lovely Coloring System product to her natural dry hair.

17.     That after application of Soft Sheen Carson® Dark and Lovely and while waiting for the color to process per the instruction on the packaging of the Coloring System, the Plaintiffs' Decedent, CORNELIA MORRIS, began to suffer from difficulty with breathing and shortness of breath.

18.     That due to these difficulties, Plaintiff CLARENCE MORRIS, summoned an ambulance for Plaintiffs' Decedent, CORNELIA MORRIS.

19.     That an ambulance treated Plaintiffs' Decedent, CORNELIA MORRIS, while transporting her to Jackson Park Hospital

20.     That Plaintiffs' Decedent, CORNELIA MORRIS, arrived at Jackson Park Hospital with a swollen shut airway, and was pronounced dead on arrival at the aforementioned hospital by Dr. Williams at 3:16 p.m. on July 10, 2006.

21.     That a postmortem examination was conducted by the Cook County Medical Examiner pursuant to the expiration of Plaintiffs' Decedent, CORNELIA MORRIS. (See Exhibit "A," attached herein, copy of Report of Postmortem Examination for Cornelia Morris).

22.     That Clare H. Cunliffe, M.D., Assistant Medical Examiner, examined Plaintiffs' Decedent on behalf of the Cook County Medical Examiner and issued an opinion as to the cause of the death of CORNELIA MORRIS. (Ex. A at 4).

23.     Dr. Cunliffe determined that Plaintiffs' Decedent, CORNELIA MORRIS, died of an anaphylactic reaction to hair dye. (Ex. A at 4).

24.     That Defendant designed, manufactured, marketed, sold, and placed into the stream of commerce Soft Sheen Carson® Dark and Lovely Haircolor knowing that it could cause Chemical leukoderma, cancer, damage to the liver, kidneys, lungs, asthma, birth defects, fatal allergic reactions and other harmful effects to humans.

25.     That Defendant suppressed, concealed, misrepresented and obscured data on the adverse side effects of Soft Sheen Carson® Dark and Lovely Color.

26.     The Defendant is aware or should have been aware of studies and data linking Soft Sheen Carson® Dark and Lovely Color with anaphylactic shock, death, chemical leukoderma, cancer, damage to the liver, kidneys, lungs, asthma and birth defects, but continued to design, produce, manufacture, market, distribute and sell Soft Sheen Carson® Dark and Lovely Color without any warning label as to the potential health hazards or detrimental side effects associated with Soft Sheen Carson® Dark and Lovely Color.

27.     That despite its actual knowledge of the detrimental side effects of Soft Sheen Carson® Dark and Lovely Color, the Defendant failed to warn the Plaintiffs' Decedent and the public at large of the harmful and detrimental side effects of Soft Sheen Carson® Dark and Lovely Color.

28.     That Defendants test the chemical in Soft Sheen Carson® Dark and Lovely Color, prior to manufacturing, marketing, distributing and selling Soft Sheen Carson® Dark and Lovely, and knew about the detrimental side effects.

29.     That the Defendant published false and misleading information about the safety and potential adverse side effects of Soft Sheen Carson® Dark and Lovely Color.

30.     That at all times, the Defendant knew or should have known that Soft Sheen Carson® Dark and Lovely Color would be used by the public at large, Plaintiffs' Decedent being part of the public, young children and pregnant women, who may have a family history of cancer, or may be suffering from liver, kidney and lung health problems, including and not limited to asthma. That Defendant also knew that the product causes birth defects.

31.    That Defendant designed, developed, manufactured, marketed, and distributed Soft Sheen Carson® Dark and Lovely Color which the Defendant knew, or through the exercise of reasonable care, should have known was defective and would cause damage to the public at large, Plaintiffs' Decedent being part of the public, young children and pregnant women.

32.    That Defendant failed to warn, the foreseeable users of the potential health hazards and health costs associated with the use of Soft Sheen Carson® Dark and Lovely Color.

33.    That Defendant systematically failed to provide adequate warning notice to the public at large, Plaintiffs' Decedent being part of the public at large, and under age children with proper instructions in how to remove Soft Sheen Carson® Dark and Lovely Color from their hair, even though Defendant had a duty to warn the public.

34.    That the Defendant systematically has had the public believe that the only thing the Soft Sheen Carson® Dark and Lovely Color may cause is an allergic reaction which in certain rare cases can be severe (See Ex. A, Packaging and Labeling of Soft Sheen Carson® Dark and Lovely Color), skin irritation and allergy that can be determine by a preliminary test, and that products may cause blindness if use on eyelashes or eyebrows, thereby contributing to the false impression cultivated by Defendant.

35.    The Defendant at all times has failed to perform its duties to insert proper warning label on its products, Soft Sheen Carson® Dark and Lovely Color

36.    The Defendant's actions constitute violations of statutory and regulatory provisions.

37.    That Soft Sheen Carson® Dark and Lovely Color used by the Plaintiffs' Decedent and the public at large, including children and pregnant women was and still is defective, unreasonably dangerous and unfit for its intended use, in addition, to having highly harmful and deadly effect on the publics' health at large, Plaintiffs' Decedent being part of the public, under age children, and pregnant women, and people with cancer, asthma, liver, kidney and lungs health problems.

38.    That Plaintiffs' Decedent used Soft Sheen Carson® Dark and Lovely Color in the manner that was intended. At the time of such use, Soft Sheen Carson® Dark and Lovely Color had not been changed from the time it was designed. That P-phenylenediamine, among one of the most dangerous chemical in the Soft Sheen Carson® Dark and Lovely Color has been used since the development of the product.

39.    That Soft Sheen Carson® Dark and Lovely Color will continue to cause to the public-at-large, under age children, and pregnant women with cancer, asthma, liver, kidney and lungs health problems.

40.    That Defendant exposed Plaintiffs' Decedent to each of the toxic materials that have specific health hazard chemicals listed in paragraphs 40 through 137.

41.    That **HYDROGEN PEROXIDE** causes skin burn and dermatitis.

42.    That **SODIUM STANNATE** causes irritation with redness and pain to skin.

43.    That **TETRA-SODIUM PYROPHOSPHATE** causes skin irritation.

44.    That **ISOPROPYL ALCOHOL** causes skin irritation.

45.    That **RESORCINOL** causes skin irritation and cause redness, itching, dermatitis, edema or corrosion of affected area. That Resorcinol causes loss of the superficial layers of skin.

46.    That **P-PHENYLENEDIAMINE** can be absorbed through the skin and causes chemical leukoderma.

47.    That **HEXYLENE GLYCOL** irritates skin (skin irritation can cause a secondary loss of color).

48.    That Defendant's cocktail of the ultra hazardous or poisonous chemicals listed above, contained in Defendant's products, triggered and caused Plaintiffs' Decedent anaphylactic shock, and her resultant death. The chemicals listed above which cause skin irritation, can also cause a secondary loss of color; and are inherently dangerous to the skin and causes serious and significant or catastrophic health consequences or harm.

49.    That **P-PHENYLENEDIAMINE** poses potential gastrointestinal or liver toxicity hazards.

50.    That **RESORCINOL** poses potential gastrointestinal or liver toxicity hazards.

51.    That **HYDROGEN PEROXIDE** poses potential gastrointestinal or liver toxicity hazards.

52.    That Defendant's cocktail of ultra hazardous or poisonous chemicals listed above, contained in Defendant's products, exposed Plaintiffs' Decedent and consumers to these harmful chemicals that causes gastrointestinal or liver toxicity hazards in users and serious and significant or catastrophic health consequences or harm.

53.     That **P-PHENYLENEDIAMINE** poses potential kidney toxicity hazards.

54.     That **PROPYLENE GLYCOL** has severe effect on individuals with kidney disorders.

55.     That Defendant's cocktail of ultra hazardous or poisonous chemicals listed above, contained in Defendant's products, exposed Plaintiffs' Decedent and consumers to these harmful chemicals that causes kidney toxicity hazards in users and serious and significant or catastrophic health consequences or harm.

56.     That **P-PHENYLENEDIAMINE** potential to cause immune system response resulting in problems with the lungs and airways (lung sensitization).

57.     That **P-AMINOPHENOL** potential to cause immune system response resulting in problems with the lungs and airways (lung sensitization).

58.     That **HEXYLENE GLYCOL** irritates lungs. Hexylene Glycol is used as coupling agent in the manufacturing of hydraulic fluids, industrial cleaning compounds, soluble oils and dry cleaning soaps. Further, Hexylene Glycol is used in latex paints as a valuable additive. In addition, Hexylene Glycol among many other uses is used as a solvent plasticizer in surface coating.

59.     That **HYDROGEN PEROXIDE** is corrosive to lungs.

60.     That Defendant's cocktail of poisonous chemicals listed above, contained in Defendant's products, exposed Plaintiffs' Decedent and consumers to these harmful chemicals that causes problems with the lungs and airways (lung sensitization) in users and serious and significant or catastrophic health consequences or harm.

61.     That **EDTA** irritates eyes.

62.     That **HYDROGEN PEROXIDE** cause eye burns and produces irritation, characterized by a burning sensation, redness, tearing, inflammation, and possible corneal injury. That Hydrogen Peroxide is corrosive to eyes. Further, Hydrogen Peroxide may cause irreversible tissue damage to the eyes which will cause blindness.

63.     That **SODIUM STANNATE** causes irritation, redness and pain to eyes.

64.     That **PROPYLENE GLYCOL** may cause transitory stinging and tearing.

65.     That **HEXYLENE GLYCOL** irritates eyes.

66.     That **ALCOHOL DENAT** (Alcohol Denatured) may cause eye irritation.

67.     That **PENTASODIUM PENTETATE** is an eye irritant.

68.     That **P-PHENYLENEDIAMINE** causes redness, pain and swelling of the eyelids. As well as blurred vision or permanent loss of vision (blindness).

69.     That **HYDROGEN PEROXIDE** cause eye burns and produces irritation, characterized by a burning sensation, redness, tearing, inflammation, and possible corneal injury. That Hydrogen Peroxide is corrosive to eyes. Further, Hydrogen Peroxide may cause irreversible tissue damage to the eyes which will cause blindness.

70.     That **SODIUM STANNATE** irritates eyes.

71.     That **TETRASODIUM PYROPHOSPHATE** causes redness and pain to eyes.

72.     That Defendant's cocktail of ultra hazardous or poisonous chemicals listed above, contained in Defendant's products, exposed Plaintiffs' Decedent and consumers to these harmful chemicals that causes "eye damage" in users and serious and significant or catastrophic health consequences or harm.

73.     That **HYDROGEN PEROXIDE** may cause severe and permanent damage to the digestive tract. Hydrogen peroxide also causes gastrointestinal tract burns and may cause perforation of the digestive tract. Further, it may cause severe digestive tract irritation with abdominal pain, nausea, vomiting and diarrhea. If inhaled, may cause ulceration of nasal tissue, insomnia, nervous tremors with numb extremities, chemical pneumonia, unconsciousness, and death.

74.     That **P-PHENYLENEDIAMINE** poses sense organ toxicity hazards.

75.     That **HYDROGEN PEROXIDE** poses sense organ toxicity hazards.

76.     That **PROPYLENE GLYCOL** poses sense organ toxicity hazards.

77.     That Defendant's cocktail of ultra hazardous or poisonous chemicals listed above, contained in Defendant's products, exposes Plaintiffs' Decedent and consumers to these harmful chemical that causes "organ" toxicity hazards in users and serious and significant or catastrophic health consequences or harm.

78.     That **P-PHENYLENEDIAMINE** is an ingredient in chemical group acting as nitrosating agents that can form carcinogenic nitrosamine compounds, on the skin or in the body after absorption, if mixed with amines. It is also a coal tar hair dye, with no cancer studies identified in published literature; epidemiology studies link long-time use of coal tar hair dyes to bladder cancer potentially mutate, or damage, cellular DNA in ways that may lead to cancer.

79.    That **M-AMINOPHENOL** is a coal tar hair dye, with no cancer studies identified in published literature; epidemiology studies link long-time use of coal tar hair dyes to bladder cancer.

80.    That **PHENYL METHYL PYRAZOLONE** is a coal tar hair dye, with no cancer studies identified in published literature; epidemiology studies link long-time use of coal tar hair dyes to bladder cancer.

81.    That **2, 4-DIAMINOPHENOXYETHANOL HCL** is a coal tar hair dye, with no cancer studies identified in published literature; epidemiology studies link long-time use of coal tar hair dyes to bladder cancer.

82.    That **HYDROGEN PEROXIDE** possibly causes cancer in humans.

83.    That **RESORCINOL** is an endocrine disruptor(s), raising concern for increased risks for certain cancers.

84.    That Defendant's cocktail of ultra hazardous poisonous chemicals listed above, contained in Defendant's products, exposes Plaintiffs' Decedent and consumers to the risk of developing cancer in users. Therefore, it causes serious and significant or catastrophic health consequences or harm to users.

85.    That **PROPYLENE GLYCOL** (penetration enhancer) alter(s) skin structure, allowing other chemicals to penetrate deeper into the skin, increasing the amounts of other chemicals to reach the bloodstream.

86.    That Defendant's cocktail of ultra hazardous or poisonous chemicals listed above, contained in Defendant's products, exposed Plaintiffs' Decedent and consumers to these harmful chemicals that penetrate the bloodstream. That the penetration enhancer acts or is equivalent to taking the ultra hazardous toxic chemicals internally. That Defendant's cocktail of poisonous chemicals causes serious and significant or catastrophic health consequences or harm.

87.    The term "cosmetic" means (1) articles intended to be rubbed, poured, sprinkled, or sprayed on, introduced into, or otherwise applied to the human body or any part thereof for cleansing, beautifying, promoting attractiveness, or altering the appearance *(21 USC § 321* (i)). That nothing within the meaning says anything about ultra hazardous toxic chemicals penetrating the bloodstream. That once the drug or chemical is taken internally or penetrates the blood system, it falls under the FDA review and should be treated like a drug and be subject to filing requirements.

88.    That **P-PHENYLENEDIAMINE** potentially harmful to the immune system.

89. That Defendant's cocktail of ultra hazardous or poisonous chemicals listed above, contained in Defendant's product, exposes Plaintiffs' Decedent and consumers to these chemicals that are harmful to the immune system. That Defendant's cocktail of poisonous chemicals causes serious and significant or catastrophic health consequences or harm.

90. That **ALCOHOL DENAT** (Alcohol Denatured) poses neurotoxicity hazards.

91. That **M-AMINOPHENOL** is a coal tar hair dye and poses neurotoxicity hazards.

92. That **P-PHENYLENEDIAMINE** poses neurotoxicity hazards.

93. That **RESORCINOL** poses neurotoxicity hazards.

94. That **HYDROGEN PEROXIDE** poses neurotoxicity hazards.

95. That Defendant's cocktail of ultra hazardous poisonous chemicals listed above, contained in Defendant's products, exposed Plaintiffs' Decedent and consumers to these harmful chemicals that causes neurotoxicity hazards in users and serious and significant or catastrophic health consequences or harm.

96. That **P-PHENYLENEDIAMINE** is a coal tar hair dye that cause immune system response resulting in asthma attacks.

97. That Defendant's cocktail of ultra hazardous or poisonous chemicals listed above, contained in Defendant's products exposed Plaintiffs' Decedent and consumers to these harmful chemicals that causes asthma in users and serious and significant or catastrophic health consequences or harm.

98. That **AMMONIUM HYDROXIDE** poses respiratory toxicity hazards.

99. That **M-AMINOPHENOL** is a coal tar hair dye and poses respiratory toxicity hazards.

100. That **P-PHENYLENEDIAMINE** is a coal tar hair dye and poses respiratory toxicity hazards.

101. That **HYDROGEN PEROXIDE** poses respiratory toxicity hazards.

102. That Defendant's cocktail of poisonous chemicals listed above, contained in Defendant's products, have exposed Plaintiffs' Decedent and consumers to these harmful chemicals that causes respiratory toxicity hazards and serious and significant or catastrophic health consequences or harm.

103.    That **RESORCINOL** is an endocrine disruptor(s), raising concern for impaired fertility or development.

104.    That **ALCOHOL DENAT** (Alcohol Denatured) present risks to human reproduction and development linked to potential for reduced fertility or reduced chance for a healthy, full-term pregnancy.

105.    That **M-AMINOPHENOL** is a coal tar hair dye and present risks to human reproduction and development linked to potential for reduced fertility or reduced chance for a healthy, full-term pregnancy.

106.    There is no question that Defendant's cocktail of ultra hazardous or poisonous chemicals listed above, contained in Defendant's products has exposed Plaintiffs' Decedent to these harmful chemicals and causes pregnant women consumers to birth defects and reproductive or developmental harm in users. That the ultra hazardous toxic chemicals, causes serious and significant or catastrophic health consequences or harm.

107.    That it is the Plaintiffs' belief that Defendant's secret formula contained in the hair dye is also ultra hazardous or poisonous chemicals that causes serious and significant or catastrophic health consequences or harm.

108.    That it is indispensable to have the names of the chemicals submitted to Plaintiffs for their examination. That Plaintiffs are not asking for Defendant to divulge information in respect to specific method of preparing the formula, such as percentage or proportions or the process of compounding the ingredients. That Plaintiffs need to research each chemical to find out their health effects, so that this court could further evaluate the factual allegations against Defendant's products.

109.    That **SODIUM STANNATE** has not been assessed for safety by the Defendant or the cosmetic industry's Cosmetics Ingredient Review board.

110.    That **TETRA SODIUM PYROPHOSPHATE** has not been assessed for safety by the Defendant or cosmetic industry's Cosmetics Ingredient Review board.

111.    That **ALCOHOL DENAT** (Alcohol Denatured) has not been assessed for safety by the Defendant or the cosmetic industry's Cosmetics Ingredient Review board.

112.    That **HYDROGEN PEROXIDE** has not been assessed for safety by the Defendant or the cosmetic industry's Cosmetics Ingredient Review board.

113.    That **TRIDECETH-12** has not been assessed for safety by the Defendant or the cosmetic industry's Cosmetics Ingredient Review board.

114.    That **2, 4-DIAMINOPHENOXYETHANOL HCL** has not been assessed for safety by the Defendant or the cosmetic industry's Cosmetics Ingredient Review board

115.    That **ERYTHORBIC ACID** has not been assessed for safety by the Defendant or the cosmetic industry's Cosmetics Ingredient Review board.

116.    That **CETEARYL ALCOHOL** has not been assessed for safety by the Defendant or the cosmetic industry's Cosmetics Ingredient Review board.

117.    That **TRIDECETH-2 CARBOXAMIDE MEA** has not been assessed for safety by the Defendant or the cosmetic industry's Cosmetics Ingredient Review board.

118.    That Defendant's cocktail of ultra hazardous or poisonous chemicals listed above, contained in Defendant's products exposed Plaintiffs' Decedent and consumers to unknown harm that are sure to cause serious and significant or catastrophic health consequences or harm.

119.    The implementing regulations require the placement of a warning label on cosmetic products for which adequate substantiation of safety has not been obtained *(21 U.S.C.A. § 362*(a), (c)). That 21 C.F.R. 740.10(a) the regulation provides as follows:

   a.    Each ingredient used in a cosmetic product and each finished cosmetic product shall be adequately substantiated for safety prior to marketing. Any such ingredient or product whose safety is not adequately substantiated prior to marketing is misbranded unless it contains the following conspicuous statement on the principal display panel:

   **Warning:** The safety of this product has not been determined

120.    That the foregoing ingredients have not been proven to be safe, and the products have failed to bear the required warning label. Therefore, the products are misbranded and are subject to voluntary recall, injunction or seizure *(21 U.S.C.A. § 362, 21 U.S.C.A. § 332, 21 U.S.C.A. § 334,* 21 C.F.R. § 7.40, and 21 C.F.R. § 7.45. Also, Defendant is in violation of *21 USC § 321* (n)) since the product is misbranded and fails to reveal the factual material thereto

121.    That **M-AMINOPHENOL** is a coal tar hair dye and considered toxic in one or more government assessments.

122.    That **P-PHENYLENEDIAMINE** is considered toxic in one or more government assessments.

123. That **RESORCINOL** is considered toxic in one or more government assessments.

124. That **HYDROGEN PEROXIDE** is considered toxic in one or more government assessments.

125. That Defendant's cocktail of ultra hazardous or poisonous chemicals listed above, contained in Defendant's products, exposed Plaintiffs' Decedent and consumers to ultra hazardous toxic chemicals that causes serious and significant or catastrophic health consequences or harm.

126. That **M-AMINOPHENOL** is a coal tar hair dye and poses potential risks to wildlife and the environment through excretion and disposal of cosmetics resulting in contamination of water, air, or soil.

127. That **P-PHENYLENEDIAMINE** is a coal tar hair dye and poses potential risks to wildlife and the environment through excretion and disposal of cosmetics resulting in contamination of water, air, or soil.

128. That **RESORCINOL** poses potential risks to wildlife and the environment through excretion and disposal of cosmetics resulting in contamination of water, air, or soil.

129. That **HYDROGEN PEROXIDE** poses potential risks to wildlife and the environment through excretion and disposal of cosmetics resulting in contamination of water, air, or soil.

130. That **OLEYL ALCOHOL** poses potential risks to wildlife and the environment through excretion and disposal of cosmetics resulting in contamination of water, air, or soil.

131. That Defendant's cocktail of ultra hazardous or poisonous chemicals listed above, contained in Defendant's products, exposed Plaintiffs' Decedent and consumers to hazardous toxic chemicals and exposes our environment with contamination. That Defendant's cocktail of poisonous chemicals also causes serious and significant health consequences.

132. That **HYDROGEN PEROXIDE** is a chemical that may pose dangers in occupational settings, or that merit safety and handling warnings.

133. That Defendant's cocktail of ultra hazardous or poisonous chemicals listed above, contained in Defendant's products, exposed Plaintiffs' Decedent, consumers and children to dangerous chemical properties relative to safety and handling.

134. That Defendant is intentionally and willfully negligent in that it does not provide a safety cap on its product for the safety of children.

135. That Defendant is in violation of C.F.R. § 700.25 Tamper-resistant packaging requirements for cosmetic products since their "liquid" products do not have tamper-resistant to safeguard children against the ultra hazardous chemicals that Defendant is marketing and distributing through retail stores throughout the United States.

136. That no person in the course of doing business shall knowingly and intentionally expose any individual to a chemical known to cause cancer or reproductive toxicity without first giving clear and reasonable warning to such individual.

137. That **PROPYLENE GLYCOL** stored in containers may explode in heat or in fire.

138. That **P-PHENYLENEDIAMINE** is combustible and gives off irritating or toxic fumes or gases in a fire.

139. That Defendant's cocktail of poisonous chemicals listed above, contained in Defendant's products exposes consumer users to flammable materials and that may, if ignited, cause serious and significant or catastrophic health consequences or harm to user.

140. That science can provide considerable information about the long-term risks a chemical poses to human health and that Plaintiffs are certain that Defendant, after numerous decades have by now determined the scientific uncertainties regarding Defendant's chemical toxicity in their products by conducting a "comprehensive preventable" safety testing. That this comprehensive level of research consists of a series of studies sufficient to resolve most remaining scientifically answerable questions regarding the extent of the hazard and in order to obtain a full assessment. Yet, Defendant has refused to properly warn the public at large of the health hazard of their ultra hazardous toxic products and fraudulently concealed the serious and significant health consequences or harm of their product.

141. That the responsibility is that of the manufacturers, in this case Defendant, who is best able to conduct research on preventable uncertainties regarding the long-term safety of their products and by-products because they, without question, have superior and exclusive access to the information needed to conduct these tests. Further, Defendant is also in the best position to compile the underlying information needed to evaluate the long-term safety of their product.

142. That Defendant has superior access and control of critical information and therefore, this court must apply in this case **res ipsa loquitur** since Defendant is negligent due to the fact that defendant is in the best position to produce exculpatory information.

143. In conclusion, a consumer buys a product after evaluating the risks in its use. However, the consumer is not on an equal footing with the manufacturer who is in a unique position to know the specific risks involved.

144. That Defendant for numerous decades have been aware of the dangerous effect of the hazardous chemical contained in Soft Sheen Carson® Dark and Lovely Color and have failed in their responsibility to inform the public-at-large of the hazardous effects of these chemicals. One particular chemical that Defendant has been aware since 1933 is p-phenylenediamine, which is the chemical that have been linked to chemical leukoderma.

145.   That In 1933, more than 12 women were blinded and one woman died from using a permanent mascara called Lash Lure. That Lash Lure contained P-phenylenediamine, an untested chemical in 1933 and untested 2005. At the time, there were no regulations to ensure the safety of products other than an allergy test approved as per *21 USC § 361* which is unappropriate since the problem with this hazardous chemical is known to cause liver (dysfunction) and kidney disorder, gastrointestinal or liver hazards, etc. In addition, P-phenylenediamine is known to cause horrific blisters, abscesses, and ulcers on the face, eyelids, and eyes of its users.

146.   These dyes have repeatedly been cited in scientific literature as capable of causing serious reactions when placed in direct contact with the eye. Yet, Defendant has continued to use P-phenylenediamine in their hair dye products.

147.   That in addition, P-phenylenediamine dyes have a long history of causing urticaria, contact dermatitis, leukoderma, and anaphylaxis.

148.   That Paraphenylenediamine (PPD) is a chemical substance that is not only used as a permanent hair dye but have also been found in textile, fur dyes, dark coloured cosmetics, temporary tattoos, photographic developer and lithography plates, photocopying and printing inks, black rubber, oils, greases and gasoline.

149.   Reaction caused by the use of hair dye in mild cases usually only involves dermatitis to the upper eyelids or the rims of the ears. In more severe cases, there may be marked reddening and swelling of the scalp and the face. The eyelids may completely close and the allergic contact dermatitis reaction may become widespread.

150.   Other immediate reactions to PPDA, are contact urticaria, angioedema, and anaphylaxis, that have been reported from hair dye use.

## ALTERNATIVE DESIGN OR MANUFACTURING: L'OREAL(R) SOFT SHEEN CARSON® DARK AND LOVELY COLOR

151.   That the Defendant could have manufactured the hair coloring using normal Henna crushed powder of leafs from plant Lawsnia inermis which give color to hair when applied, instead it manufactured the products using ultra hazardous or toxic poisonous chemicals.

152.   If a product is designed in such a way that it is foreseeable that injury could result, and if the risk of injury could have been reduced by an alternative design, then a product is said to be defective in its design.

153.   That Defendant's products are in fact defective in a number of ways: (1) the product is marketed with inadequate instructions and warnings as to foreseeable risks, and therefore it has a marketing defect, (2) the product is manufactured with a flaw, i.e., a manufacturing defect, (3) the products are designed in such a way that it is foreseeable that injury could result, and (4) the

risk of injury could be reduced by an alternative design. That Defendant's products are unsafe and dangerous and are not capable of being made safe for its intended and ordinary use.

154.    An alternative in accomplishing the same hair color results, Defendant should manufacture the hair dye using Henna, a natural ingredient or less harmful than Defendant's ultra hazardous toxic chemicals. The court should consider that Defendant's products are not necessary to human survival and good public health.

## COUNT I: STRICT PRODUCT LIABILITY BASED ON UNSAFE, DEFECTIVE AND "UNREASONABLY DANGEROUS" TOXIC CHEMICAL PRODUCTS

155.    Plaintiffs re-allege and incorporate by reference the allegations contained in Paragraph 1 through 153 of this Complaint.

156.    That Soft Sheen Carson® Dark and Lovely Color is a defective product manufactured daily, and are "unreasonably dangerous" for its intended use. That the defective product containing ultra hazardous toxic chemicals caused Plaintiffs' Decedent's anaphylactic shock and subsequent death.

157.    That Soft Sheen Carson® Dark and Lovely Color is "unreasonably dangerous" and defective products that are affirmed by the absence of an adequate warning and instructions alerting the user of the danger in using the product.

158.    That Defendant as a manufacturer owes a duty to Plaintiffs' Decedent and consumers under the doctrine of strict liabilities since it has control and discretion over the production of their defective products and warning labels.

159.    That strict liability allows Plaintiffs to recover against the Defendant's products since the product is a defective condition and is "unreasonably dangerous" and caused harm to the Plaintiffs' Decedent. It is well settled that dangerous products can be considered defective for strict liability purposes if it is distributed without sufficient warnings to notify the ultimate user of dangers inherit in the product.

160.    That the Defendant manufacturer breached its duty to Plaintiffs' Decedent and consumers in that:

a.  Defendant's products were in a defective condition at the time of purchase;
b.  The products were "unreasonably dangerous" to the Plaintiffs' Decedent;
c.  The products were the direct cause to the injuries sustained by Plaintiffs' Decedent which caused her death.

WHEREFORE JANE CRAIG, CLARENCE MORRIS, JR., BETTY MORRIS, AARON MORRIS, ATHENA MORRIS, RICKY MORRIS, ANTHONY MORRIS, STACEY MORRIS,

TYRONE MORRIS, Individually, and as Administrators of the Estate of CORNELIA MORRIS, Deceased, ask that a judgment be entered against the Defendants, in a fair and just amount in excess of fifty thousand dollars ($50,000).

## COUNT II: STRICT PRODUCT LIABILITY BASED DEFECTIVE OR INADQUATE FAULTY AND DECEPTIVE WARNING LABEL

161.    Plaintiffs re-allege and incorporate by reference the allegations contained in Paragraph 1 through 159 of this Complaint.

162.    That Plaintiffs' Decedent and consumers have a right to be properly apprised of any risk in using any product sold. It is only then can Plaintiff and consumers could make an informed decision as to whether the product is safe for them to use as it may relate to their medical condition and/or family health history.

163.    That the product is unreasonably dangerous and provides no warning against toxicity.

164.    That Defendant's product warning label is not thorough and conspicuous. That the product, Soft Sheen Carson® Dark and Lovely Color, fails to warn about chemicals that can trigger anaphylactic shock.

165.    That Soft Sheen Carson® Dark and Lovely Color does not have the warning declaration that the product can cause cancer, damage to the liver (dysfunction), kidney (disorders), lungs, asthma, birth defects, anaphylactic shock, and death on its box, therefore, the ingredients declarations do not appear in prominence and conspicuousness as to render it likely to be read and understood by ordinary individuals under normal conditions of purchase (See 21 CFR § 701.3; 21 C.F.R. § 701.2).

166.    That Soft Sheen Carson® Dark and Lovely Color product does not have the necessary warning that corresponds with the product's ultra hazardous toxic chemicals.

167.    That the Plaintiffs and public at large best interest will be adequately served by a suitable warning as per *21 USC § 336*, such as:

    a.  Warning: That "Keep out of reach of children"
    b.  Warning: Contains chemicals that penetrate your skin and that can enter your blood system. The chemicals in this product have been known to cause in laboratory animals, anaphylactic shock, death, chemical leukoderma, cancer, bladder, "organ" cardiovascular or blood toxicity hazards, gastrointestinal or liver toxicity hazards, kidney toxicity hazards, problems with lungs and airways (lung sensitization), "eye damage" such as stop children eyes from

developing properly and cataracts to develop in adults, severe digestive tract irritation, ulceration of nasal tissue, unconsciousness, death, immunotoxicity hazards, neurotoxicity hazards, asthma, birth defects and reproductive or developmental harm, respiratory toxicity hazards, itching, burning, scaling, hives, and blistering of skin.

c.  Warning: There are a total of twenty four chemicals in this product that has not been assessed for safety by the cosmetic industry.

d.  Warning: DANGER FLAMMABLE/COMBUSTIBLE, use only with adequate ventilation, keep away from sources of ignition.

168.  That the product violates C.F.R. § 740.18 Coal tar hair dyes posing a risk of cancer and C.F.R. § 740.2 since the products do not list the mandatory below warning on their products prominently and conspicuously in bold type lettering to render it likely to be read and understood by Plaintiffs' Decedent and the ordinary individual, i.e., consumers, under customary conditions of purchase and use.

169.  That C.F.R. § 740.18 mandates the following label on coal tar hair dyes:

a.  **Warning: Contains an ingredient that can penetrate your skin and has been determined to cause cancer in laboratory animals.**

170.  That the product violates C.F.R. § 740.1 since the product's labels does not bear any warning on their ultra hazardous chemicals to prevent health hazards that may be associated with the product.

171.  That Soft Sheen Carson® Dark and Lovely Color does not have the warning declaration on its box (21 CFR § 701.3). That the law requires that the ingredient declaration be conspicuous so that it is likely to be read at the time of purchase (21 C.F.R. § 701.2).

172.  That even if Soft Sheen Carson® Dark and Lovely Color had the proper warning, cosmetics with ingredients that are unsafe for the uses indicated in the package direction meet the prerequisites for a recall (21 C.F.R. § 7.40, 21 C.F.R. § 7.45).

173.  That Defendant has not met the federal labeling requirements since it has negated on the required warning (21 CFR § 191.102 (1965)).

WHEREFORE AARON MORRIS, Individually, and as Special Administrator of the Estate of CORNELIA MORRIS, Deceased, asks that a judgment be entered against the Defendants, in a fair and just amount in excess of fifty thousand dollars ($50,000).

**COUNT III: STRICT PRODUCT LIABILITY BASED ON DEFECTIVE OR INADQUATE AND DECEPTIVE INSTRUCTIONS ON REMOVING ULTRA HAZARDOUS TOXIC CHEMICALS AND RISK INVOLVED IN USING PRODUCTS**

174.    Plaintiffs re-allege and incorporate by reference the allegations contained in Paragraph 1 through 172 of this Complaint.

175.    That in addition to Defendant not apprising Plaintiffs' Decedent of the ultra hazardous toxic chemicals and risk involved in using Soft Sheen Carson® Dark and Lovely Color, the instructions contained inside the box are inadequate and poses a danger to the user of the product.

176.    That the chemicals contained in Soft Sheen Carson® Dark and Lovely Color are dangerous and this product does not provide visual instructions on how to rinse the hair after applying the ultra hazardous toxic chemicals, and the instructions are inadequate and deceptive and poses a danger to the user of the product.

177.    That section 4 of the instruction guide does not request that you wear gloves when rinsing the hair. Also, section 4 does not instruct the person using the product to be sure to close their eyes and keep them closed during the rinse process. The written instruction only states:

> "when processing time is up, add a little lukewarm water to your hair and work the color mixture into a lather. Rinse thoroughly until water runs clear. If color mixture gets into your eyes, rinse out quickly with water".

178.    That Soft Sheen Carson® Dark and Lovely Color is "unreasonably dangerous" and lacks adequate instructions. To be effective, the instructions must be clear and not confusing and have a purpose to help the consumers use the product in a safe manner.

179.    That Soft Sheen Carson® Dark and Lovely Color fails to provide proper instruction on how to remove the hazardous chemical and warn about chemicals that can trigger anaphylactic shock, death, and effect organs, such as kidney, liver, heart, lungs, etc.

180.    That Defendant, the manufacturer of Soft Sheen Carson® Dark and Lovely Color, has a legal duty to provide adequate instructions for the safe use of its product, but has intentionally since the development of the product, has not provided adequate instructions. That since such warnings are not present, the Defendant is liable for injuries caused to Plaintiffs' Decedent by the products.

181.    Further, Defendant, as the manufacturer of the products have a duty to perform safety tests to determine what written instructions should be included as part of the products. In contrast, Defendant provides defective or inadequate instructions on removing the ultra hazardous toxic chemicals.

182.    That the Defendant did not provide clear instructions on how to remove the products from the hair thorough and conspicuous.

WHEREFORE JANE CRAIG, CLARENCE MORRIS, JR., BETTY MORRIS, AARON MORRIS, ATHENA MORRIS, RICKY MORRIS, ANTHONY MORRIS, STACEY MORRIS, TYRONE MORRIS, Individually, and as Administrators of the Estate of CORNELIA MORRIS, Deceased, ask that a judgment be entered against the Defendants, in a fair and just amount in excess of fifty thousand dollars ($50,000).

## COUNT IV: DEFENDANT'S NEGLEGENCE LIABILITY BASED ON UNSAFE, DEFECTIVE AND "UNREASONABLY DANGEROUS" TOXIC CHEMICAL PRODUCTS

183.    Plaintiffs re-allege and incorporate by reference the allegations contained in Paragraph 1 through 181 of this Complaint.

184.    That Defendant's product, Soft Sheen Carson® Dark and Lovely Color is a defective product manufactured daily that is "unreasonably dangerous" for its intended use which caused Plaintiffs' Decedent's anaphylactic shock and death resulting from Defendant's defective product containing ultra hazardous toxic chemicals.

185.    That Soft Sheen Carson® Dark and Lovely Color is "unreasonably dangerous" and defective is affirmed by the absence of an adequate warning and instructions alerting the user of the danger in using the Defendant's product.

186.    That Defendant as a manufacturer owed a duty to Plaintiffs' Decedent and consumers and has been negligent, since it has control and discretion over the production of their defective products and labels, and been purposely silent on the warning label it had to display on their products.

187.    That (1) the Defendant's product was in a defective condition on date of purchase, (2) that the product was "unreasonably dangerous" to the Plaintiffs' Decedent, and (3) that the product was the cause of the direct injuries sustained by Plaintiffs' Decedent.

WHEREFORE AARON MORRIS, Individually, and as Special Administrator of the Estate of CORNELIA MORRIS, Deceased, asks that a judgment be entered against the Defendants, in a fair and just amount in excess of fifty thousand dollars ($50,000).

## COUNT VI: DEFENDANT'S NEGLIGENCE LIABILITY BASED ON DEFECTIVE OR INADQUATE FAULTY, AND DECEPTIVE WARNING LABEL

188.    Plaintiffs re-allege and incorporate by reference the allegations contained in Paragraph 1 through 186 of this Complaint.

189.    That Defendant did not apprise Plaintiffs' Decedent and the public-at-large of
        any risk in using their product even though the Defendant has a duty to do so
        under law. It is only then that consumers can make an informed decision as to
        whether the product is safe for them to use based on their medical condition or
        family history.

190.    That Defendant failed to insert the necessary alarming warning labels that
        correspondence with the product (Soft Sheen Carson® Dark and Lovely
        Color), ultra hazardous toxic chemicals. That Defendant's product is
        misbranded since it failed to include the required information in such a way to
        be understood under customary conditions of purchase (See *21 U.S.C.A. §
        362)*.

191.    That Defendant's label statements, as required by regulation, must be placed on
        the label with such prominence and conspicuousness that they are readily
        noticed and understood by consumers under customary conditions of purchase
        (See 21 C.F.R. § 701.2). That the corresponding label to Soft Sheen Carson®
        Dark and Lovely Color is:

    a.  Warning: That "Keep out of reach of children"
    b.  Warning: Contains chemicals that penetrate your skin and that can enter your
        blood system. The chemicals in this product have been known to cause in
        laboratory animals, chemical leukoderma, cancer, bladder, "organ"
        cardiovascular or blood toxicity hazards, gastrointestinal or liver toxicity
        hazards, kidney toxicity hazards, problems with lungs and airways (lung
        sensitization), anaphylactic shock, "eye damage" such as stop children eyes
        from developing properly and cataracts to develop in adults, severe digestive
        tract irritation, ulceration of nasal tissue, unconsciousness, death,
        immunotoxicity hazards, neurotoxicity hazards, asthma, birth defects and
        reproductive or developmental harm, respiratory toxicity hazards, itching,
        burning, scaling, hives, and blistering of skin.
    c.  Warning: There are a total of twenty four chemicals in this product that has
        not been assessed for safety by the cosmetic industry.
    d.  Warning: DANGER FLAMMABLE/COMBUSTIBLE, use only with
        adequate ventilation, keep away from sources of ignition.

192.    That even if Defendant had the proper warning on their product Soft Sheen
        Carson® Dark and Lovely Color, products or cosmetics with ingredients that
        are unsafe for the uses indicated in the package direction meet the prerequisites
        for a recall (See 21 C.F.R. § 7.40, 21 C.F.R. § 7.45).

193.    That Defendant designed, manufactured, marketed, sold, and placed into the
        stream of commerce Soft Sheen Carson® Dark and Lovely Color knowing that
        it would cause the following:

a. Anaphylactic shock, death, cancer, bladder, "organ" cardiovascular or blood toxicity hazards, gastrointestinal or liver toxicity hazards, kidney toxicity hazards, problems with lungs and airways (lung sensitization), "eye damage" such as stop children eyes from developing properly and cataracts to develop in adults, severe digestive tract irritation, ulceration of nasal tissue, unconsciousness, death, immunotoxicity hazards, neurotoxicity hazards, asthma, birth defects and reproductive or developmental harm, respiratory toxicity hazards, itching, burning, scaling, hives, and blistering of skin.

194.    That despite Defendant's actual knowledge of the detrimental side effects of Soft Sheen Carson® Dark and Lovely Color the Defendant failed to warn adequately and sufficiently the Plaintiff and the public at large of the harmful and detrimental side effects of its products.

195.    That Defendant intentionally either did not test or adequately test the chemicals in Soft Sheen Carson® Dark and Lovely Color, and still manufactured, marketed, and distributed the ultra hazardous toxic chemicals.

196.    That Defendant published false and misleading information about the safety and potential adverse side effects of Soft Sheen Carson® Dark and Lovely Color.

197.    That Defendant systematically failed to provide adequate warning notice to the public at large, Plaintiffs' Decedent being part of the public at large, under age children with proper instructions in how to remove the ultra hazardous toxic chemicals Soft Sheen Carson® Dark and Lovely Color from the hair after application if an allergic reaction were to occur.

198.    That the Defendant knows that the warning must clearly alert the user to avoid certain unsafe uses of the product and that sufficiency of a warning is dependent upon both the language used and the impression that the language is calculated to make upon the mind of the average user of the product. In this case that the warning does not in any form convey the risk of the danger associated with Defendant's product.

199.    That Defendant's actions, as alleged, constitute violations of statutory and regulatory provisions.

200.    That Defendant is negligent since:

a. The Defendant did not provide due care to Plaintiffs' Decedent, which is a duty which Defendant is obligated to provide, i.e., Defendant is bound to act as a reasonably prudent person under the circumstances;
b. the Defendant breached that duty;
c. the Defendant's breach was the legal and proximate cause of injury to the Plaintiffs' Decedent;

d. the Plaintiffs' Decedent suffered anaphylactic shock and death as a result of the Defendant's actions not to inform the Plaintiff of the products ultra hazardous toxic chemicals.

201. That Defendant was negligent in releasing the unreasonably dangerous products into the market.

202. That Defendant with intention and for economical gains did not act with reasonable care to ensure the safety of the product and continue to manufacture the "unreasonably dangerous" defective product (Soft Sheen Carson® Dark and Lovely Color).

WHEREFORE AARON MORRIS, Individually, and as Special Administrator of the Estate of CORNELIA MORRIS, Deceased, ask that a judgment be entered against the Defendants, in a fair and just amount in excess of fifty thousand dollars ($50,000).

## COUNT VII: DEFENDANT'S NEGLIGENCE LIABILITY BASED ON FRAUDULENT CONCEALMENT OF ULTRA HAZARDOUS TOXIC CHEMICALS AND THEIR ADVERSE EFFECTS ON HUMANS

203. Plaintiffs re-allege and incorporate by reference the allegations contained in Paragraph 1 through 201 of this Complaint.

204. That Defendant at all times in designing, manufacturing, marketing, distributing and selling Soft Sheen Carson® Dark and Lovely Color knew that this product was and is still today hazardous to humans.

205. That at all times in marketing Soft Sheen Carson® Dark and Lovely Color, the Defendant falsely and fraudulently represented, expressly or impliedly to Plaintiff, and the public at large, not limited to the market at large, that Soft Sheen Carson® Dark and Lovely Color are safe to use. That Defendant suppressed and concealed facts that Soft Sheen Carson® Dark and Lovely Color is harmful, dangerous and deleterious to the health of humans. That the Defendant knew of these dangerous propensities when it designed, manufactured, marketed, sold and distributed Soft Sheen Carson® Dark and Lovely Color.

206. That when Defendant has published and disseminated information publicly and in publications which represented Soft Sheen Carson® Dark and Lovely Color as well-suited, safe and highly effective for its intended use.

207. That the misrepresentations, suppressions, and failures to disclose information were made then and are still being made by the Defendant with the intent to induce Plaintiffs' Decedent and the public at large and the market to purchase and use Soft Sheen Carson® Dark and Lovely Color.

208.    That the Plaintiffs' Decedent relied on the Defendant's misrepresentations as well as the absence of adverse information in purchasing and using Soft Sheen Carson® Dark and Lovely Color.

209.    That Defendant has continued at all times to falsely and fraudulently misrepresent, and suppress, the dangerous propensities and deleterious ultra hazard toxic chemicals of Soft Sheen Carson® Dark and Lovely Color.

210.    That Plaintiffs' Decedent at the time of purchase and use of Defendant's products was ignorant of the existence of the facts which Defendant misrepresented, suppressed and failed to disclose. That if the Plaintiffs' Decedent had been aware of the existence of the true facts of these chemicals, the Plaintiffs' Decedent would not have ever purchased or used Soft Sheen Carson® Dark and Lovely Color and would have not suffered the injuries and resultant death stated in this complaint herein.

211.    That as a direct result of Defendant's concealment suppression of facts relative to the ultra hazardous toxic chemical and failure to disclose, and the continued manufacturing, sale and marketing of Soft Sheen Carson® Dark and Lovely Color, the Plaintiffs' Decedent was directly and materially harmed and injured. Further, the public at large continues to be exposed to the ultra hazardous toxic chemicals.

212.    That a layman, like Plaintiffs' Decedent, has no way of knowing about the ultra hazardous toxic chemical that are harmful to their health or could cause anaphylactic shock and death. Even if the average person took upon the task of researching every toxic chemical, he or she, would not be able to analyze the impact of the combined mixed chemicals that results in impurities that may cause other dangers.

213.    That Defendant at all times in designing, manufacturing, marketing, distributing and selling Soft Sheen Carson® Dark and Lovely Color knew that the product is harmful to human kind and can cause anaphylactic shock and death.

214.    That Defendant falsely and fraudulently represented expressly or impliedly to Plaintiffs' Decedent, and the public at large that Soft Sheen Carson® Dark and Lovely Color are safe to use. That the Defendant suppressed and concealed facts that Soft Sheen Carson® Dark and Lovely Color could be harmful, dangerous and deleterious to the health of humans and could cause death. That the Defendant knew of these dangerous propensities when it designed, manufactured, marketed, distributed and sold Soft Sheen Carson® Dark and Lovely Color.

215.    That Defendant's acts and omissions in this complaint to this court were committed by Defendant with indifference to the rights of the Plaintiffs and

Plaintiffs' Decedent and the public at large and were intentionally carried out to maximize the sale and use of Soft Sheen Carson® Dark and Lovely Color.

216.    That Defendant concealed the toxic hazard chemicals in the products from the Plaintiffs' Decedent, thereby causing the Plaintiffs' Decedent toxic and fatal injury.

217.    That a fiduciary relationship is not a required element of the cause of action concealment against Defendant since it had a duty to disclose the toxic chemical hazards that effects health as established by Federal Law Consumer Fraud Act and other federal laws contained in this complaint. That the legislature designed the Consumer Fraud Act to expand consumers' rights beyond the common law to eliminate all forms of deceptive and unfair business practices and to provide appropriate relief to consumers.

218.    That no person in the course of doing any business shall knowingly and intentionally expose any individual to any chemicals known to cause cancer or reproductive toxicity without first giving clear and reasonable warning to such individual.

219.    That: (1) The Defendant concealed or suppressed material facts; (2) Defendant had a duty to disclose the medical and scientific information about the ultra hazardous toxic chemicals to the Plaintiffs' Decedent; (3) Defendant intentionally concealed or suppressed the toxic hazard of the product with the intent to defraud the Plaintiffs' Decedent and induce the Plaintiffs' Decedent to use its products); (4) Ignorance of the hazard: Plaintiff was unaware of the facts and would not have used Soft Sheen Carson® Dark and Lovely Color had Plaintiffs' Decedent knew of the concealed or suppressed facts; and (5) As a result of the concealment or suppression of the facts of Defendant's products, Soft Sheen Carson® Dark and Lovely Color, the Plaintiffs' Decedent sustained anaphylactic shock which caused her death.

220.    That Defendant's intentional and bad faith perversion of the truth about their products induced Plaintiffs' Decedent to reliance upon and part with the cost of the products which are ultra hazardous toxic chemicals that caused the Plaintiffs' decedent's anaphylactic shock and death.

221.    That Defendant has used the 48 hour Patch test for allergic sensitivity to hair dyes for numerous decades to circumvent the health laws and to cheat the public at large by perpetrating the product may be allergic only to some, but not the majority of the public at large. That Defendant through lobbyist has managed over the years to avoid having to inform the public at large about Defendant's ultra hazardous toxic chemicals of its products.

222.    That Defendant's fraud to the public at large, Plaintiffs' Decedent being part of the public at large, is contrary to legal or equitable duty, trust, or confidence

and is contrary to good conscience and operates in disregards to health. That Defendant's fraudulent act breached honesty, integrity, and moral turpitude.

223.    That Defendant is in violation of *(18 USC § 1001)* since it knowingly and willfully concealed fraudulently the ultra hazardous toxic chemicals of its products.

224.    That Defendant has ignored and has failed to act upon medical and scientific data indicating that their hair dye products are hazardous to the health of humans. Thereby, Defendant has engaged in false and deceptive conduct in their marketing of their products in violation of Section 2 of the Consumer Fraud Act.

WHEREFORE AARON MORRIS, Individually, and as Special Administrator of the Estate of CORNELIA MORRIS, Deceased, ask that a judgment be entered against the Defendants, in a fair and just amount in excess of fifty thousand dollars ($50,000).

### COUNT VIII: DEFENDANT'S BREACH OF WARRANTY (LIABILITY)

225.    Plaintiffs re-allege and incorporate by reference the allegations contained in Paragraph 1 through 223 of this Complaint.

226.    That Defendant failed to represent accurately to Plaintiffs' Decedent, either directly or indirectly, that Soft Sheen Carson® Dark and Lovely Color is unfit and unsafe to use.

227.    That Defendant intended that the product to be used by humans and impliedly warranted through the sale, advertising, and/or marketing of Soft Sheen Carson® Dark and Lovely Color that it was fit as a hair dye product.

228.    That Plaintiffs' decedent, as a user of Defendant's product, relied upon Defendant's representations, skill, expertise and judgment in assuming that Soft Sheen Carson® Dark and Lovely Color would not only perform its basic functions as warranted, but was safe, and would not cause Plaintiffs' Decedent anaphylactic shock and death.

229.     That Defendant breached these implied warranties in that Soft Sheen Carson® Dark and Lovely Color as designed, manufactured, marketed, sold and distributed are ultra hazardous, toxic, and highly harmful to humans.

230.    As a direct and proximate result of Defendant's breach of implied warranties of good and merchantable quality and fitness the Plaintiffs' decedent suffered anaphylactic shock and death

231.    That every product comes with an implied warranty that it is safe for its intended use. That a defective product that causes injury is not safe for its

intended use and thus constitutes a breach of warranty as per the Uniform Commercial Code (UCC).

232.　That at all times relevant, the Defendant, in order to induce the Plaintiffs' Decedent to purchase and use Soft Sheen Carson® Dark and Lovely Color warranted and represented that its product was the "No. 1 permanent haircolor brand in the US ethnic market" which induced Plaintiffs' Decedent to purchase and use the product. The Defendant's product Soft Sheen Carson® Dark and Lovely Color representations suggest that the product is above average and higher in quality than other haircolors in the US ethnic market and excellent in materials contained.

233.　That Plaintiffs' Decedent purchased and used Soft Sheen Carson® Dark and Lovely Color in her hair in reliance upon Defendant's express warranties and representations.

234.　That Soft Sheen Carson® Dark and Lovely Color, is contrary to Defendant's expressed warranties and representations of the products.

235.　The Defendant breached these expressed warranties in that Soft Sheen Carson® Dark and Lovely Color as designed, manufactured, marketed, distributed or sold is toxic, deleterious, and highly harmful, and does cause anaphylactic shock and death. That Defendant has subjected Plaintiffs' decedent to anaphylactic shock and caused Plaintiffs' decedent's death.

WHEREFORE AARON MORRIS, Individually, and as Special Administrator of the Estate of CORNELIA MORRIS, Deceased, ask that a judgment be entered against the Defendants, in a fair and just amount in excess of fifty thousand dollars ($50,000).

## COUNT IX-SURVIVAL ACTION BASED UPON STRICT LIABILITY, BREACH OF WARRANTY AND NEGLIGENCE

236.　Plaintiffs re-allege and incorporate by reference the allegations contained in Paragraph 1 through 234 of this Complaint.

237.　AARON MORRIS, Individually, and as Special Administrator of the Estate of CORNELIA MORRIS, Deceased, brings this action pursuant to 755 ILCS 5/27-6, commonly referred to as the Survival Act

238.　As a direct and proximate result of one or more of the Defendant's strictly liable acts, breach of warranty and/or negligent acts or omissions, the Plaintiffs' decedent, CORNELIA MORRIS, suffered personal injuries and died from anaphylactic shock caused by her used of the Defendant's unreasonably dangerous product.

239.    As a direct and proximate result, CORNELIA MORRIS, suffered injuries of a personal and pecuniary nature including, but not limited to, pain and suffering, disability, disfigurement, funeral, and related expenses; and CORNELIA MORRIS, would have been entitled to receive compensation from Defendants for these injuries, had she survived.

WHEREFORE AARON MORRIS, Individually, and as Special Administrator of the Estate of CORNELIA MORRIS, Deceased, ask that a judgment be entered against the Defendants, in a fair and just amount in excess of fifty thousand dollars ($50,000).

### COUNT X-WRONGFUL DEATH ACTION BASED UPON DEFENDANT'S NEGLIGENCE, STRICT LIABILITY AND BREACH OF WARRANTY

240.    Plaintiff re-alleges and incorporates by reference the allegations contained in Paragraph 1 through 238 of this Complaint.

241.    The Plaintiffs AARON MORRIS, Individually, and as Special Administrator of the Estate of CORNELIA MORRIS, Deceased, bring this action pursuant to the provisions of 740 ILCS 180/1, et. seq., commonly referred to as the Wrongful Death Act of the State of Illinois.

242.    As a direct and proximate result of one or more of the Defendant's negligent acts and omissions and/or strictly liable acts, and breach of warranty, the Plaintiffs' Decedent, CORNELIA MORRIS, suffered personal injuries and died from anaphylactic shock caused by her use of the Defendant's unreasonably dangerous product.

243.    CORNELIA MORRIS, left surviving her various persons who were their next of kin, including, but not limited to JANE CRAIG, CLARENCE MORRIS, JR., BETTY MORRIS, AARON MORRIS, ATHENA MORRIS, RICKY MORRIS, ANTHONY MORRIS, STACEY MORRIS, and TYRONE MORRIS.

244.    CORNELIA MORRIS's next of kin suffered injuries as a result of decedents' death, including the loss of companionship and society, grief, sorrow and mental anguish. Further, decedents' estate was diminished by virtue of the medical and funeral expenses that were incurred.

WHEREFORE AARON MORRIS, Individually, and as Special Administrator of the Estate of CORNELIA MORRIS, Deceased, asks that a judgment be entered against the Defendants, in a fair and just amount in excess of fifty thousand dollars ($50,000).

Estate Of CORNELIA MORRIS, Deceased, by and through his attorneys, Chadwick &
Lakerdas, and herein complains of the Defendants WALGREEN CO. and WALGREENS at 86th
& Cottage Grove, Chicago, IL as follows:

## COUNT XI—SURVIVAL ACTION BASED UPON WALGREEN'S BREACH OF IMPLIED WARRANTY OF MERCHANTIBILITY AND FITNESS

245.　Plaintiff realleges and incorporates by reference the allegations contained in
paragraphs 1-154.

246.　WALGREEN CO. is an Illinois corporation with a principle place of business at 86th
& Cottage Grove, Chicago, IL.

247.　WALGREENS at 86th & Cottage Grove, Chicago, IL (hereinafter referred to as
"Walgreens") is a company in the business of selling products and merchandise to
consumers.

248.　WALGREEN CO. and WALGREENS are retailers that sold the Soft Sheen Carson
Dark and Lovely Color to CORNELIA MORRIS.

249.　WALGREEN CO. and WALGREENS have sophisticated operations that include
aggressive product development, marketing and screening processes whereby
potential products to be displayed at and sold at its stores are discussed, examined,
chosen or refused, exhibited, marketed and sold.

250.　As part of these operational procedures, Soft Sheen Dark & Lovely Color was
considered, examined, and ultimately selected for retail sale. As a merchant
WALGREEN CO. and WALGREENS warranted that the Soft Sheen Dark & Lovely
Color was merchantable and fit for the particular purpose of coloring hair.

251.　The Soft Sheen Dark & Lovely Color was not merchantable and fit for the particular
purpose of coloring hair and was defective for the conditions previously stated in this
complaint.

252.　As a direct result of the breach of said implied warranties, CORNELIA MORRIS As
a direct and proximate result of one or more of the foregoing negligent acts or
omissions, Plaintiff was severely and permanently injured, seriously and permanently
disabled, experienced great conscious pain and suffering, incurred obligations for
substantial sums of money for medical, hospital and related expenses.

WHEREFORE AARON MORRIS, Individually, and as Special Administrator of the Estate
Of CORNELIA MORRIS, Deceased, asks that a judgment be entered against the Defendants
WALGREEN CO. and WALGREENS, in a fair and just amount in excess of fifty thousand

dollars ($50,000).

## COUNT XII—WRONGFUL DEATH ACTION BASED UPON WALGREENS BREACH OF IMPLIED WARRANTY OF MERCHANTIBILITY AND FITNESS

253. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-154.

254. The Plaintiff AARON MORRIS, Individually, and as Special Administrator of the Estate of CORNELIA MORRIS, Deceased, bring this action pursuant to the provisions of 740 ILCS 180/1, et. Seq., commonly referred to as the Wrongful Death Act of the State of Illinois.

255. As a direct and proximate result of one or more of the Defendant's negligent acts and omissions and/or strictly liable acts, and breach of warranty, the Plaintiff's Decedent, CORNELIA MORRIS, suffered personal injuries and died from anaphylactic shock caused by her use of the Defendant's unreasonably dangerous product.

256. CORNELIA MORRIS left surviving her various persons who were their next of kin, including, but not limited to JANE CRAIG, CLARENCE MORRIS, JR., BETTY MORRIS, AARON MORRIS, ATHENA MORRIS, RICKY MORRIS, ANTHONY MORRIS, STACEY MORRIS, and TYRONE MORRIS.

257. CORNELIA MORRIS's next of kin suffered injuries as a result of decedent's death, including the loss of companionship and society, grief, sorrow and mental anguish. Further, decedent's estate was diminished by virtue of the medical and funeral expenses that were incurred.

WHEREFORE AARON MORRIS, Individually, and as Special Administrator of the Estate Of CORNELIA MORRIS, Deceased, asks that a judgment be entered against the Defendants WALGREEN CO. and WALGREENS, in a fair and just amount in excess of fifty thousand dollars ($50,000).

## COUNT XIII-MAGNUSON MOSS

258. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-154.

259. Pursuant to 15 U.S.C. 2301, et seq. Plaintiff is entitled to costs, expenses and attorney's fees for WALGREEN CO. and WALGREENS breach of its implied warranties of merchantability and fitness for a particular purpose and respectfully requests such an award as part of its damages.

WHEREFORE AARON MORRIS, Individually, and as Special Administrator of the Estate Of CORNELIA MORRIS, Deceased, asks that a judgment be entered against the Defendants WALGREEN CO. and WALGREENS, in a fair and just amount in excess of fifty thousand dollars ($50,000).


/s/ Michael G. Kelly

_____

Michael G. Kelly


Sturgis E. Chadwick, III
Chadwick & Lakerdas
5300 South Shore Dr. #100
Chicago, IL 60615
(773) 955-1088

# FORENSIC INSTITUTE

MEDICAL EXAMINER CASE REPORT COOK COUNTY        CASE NO   *180 July 2006*

| DECEASED | AGE | SEX | RACE | ADDRESS    8729 S. Prairie | | | |
|---|---|---|---|---|---|---|---|
| *Cornelia Morris* | 83 | F | B | CITY  *Chicago*        STATE  *IL*   ZIP  *60619* | | | |

DOB  *3/9/29*        PHOTOS  *None*

TELEPHONE   *773    846-0225*

SOCIAL SECURITY   *N/A*

TYPE OF INVESTIGATION

SCENE ☐    TELEPHONE   X    F.H. ☐        HOSP ☐

ADDRESS OF OCCURRENCE   *8729 S. Prairie*

TYPE OF PREMISES WHERE FOUND

CITY  *Chgo*  STATE  *IL*  COUNTY  *Cook*  ZIP  *6061*

*Residence*

TIME/DATE FOUND
*1300 hrs. 10 July 2006*

POLICE REPORT NUMBER
*HM 467115*

| PERSON DISCOVERING DECEASED | RELATIONSHIP | ADDRESS    8729 S. Prairie | PHONE/EXT |
|---|---|---|---|
| *Clarence Morris* | *Son* | CITY  *Chicago*    STATE  *IL*  ZIP  *60619* | *846-0225* |

| PERSON(S) INTERVIEWED | | | |
|---|---|---|---|
| *Officer Pickens #2791* | *Reporting Officer* | *Chicago Police Department 4th District* | *747-8205* |
| *Deonna Holmes* | *Grand-daughter* | *8729 S. Prairie* | *846-0225* |

| PRONOUNCEMENT  *DOA* | PHYSICIAN/INV | HOSPITAL/SCENE |
|---|---|---|
| DATE:  *7/10/06*  TIME:  *1516 hrs.* | *Williams* | *Jackson Park* |

| POLICE NOTIFIED | INSTITUTE NOTIFIED | ASSIGNED | CLOSED |
|---|---|---|---|
| DATE:  *7/10/06*  TIME:  *1800 hrs.* | DATE:  *7/10/06*  TIME:  *1840 hrs.* | DATE:  *7/10/06*  TIME:  *2000 hrs.* | *7/10/06*  *2100 hrs.* |

NARRATIVE: DESCRIBE CIRCUMSTANCES SURROUNDING DEATH-PHYSICAL EVIDENCE, ETC.

*On 10 July 2006 at 1840 hours notification was received from Officer Pickens #2791, beat 411 of the Chicago Police Department in regard to the subject's demise.*

*Officer Pickens related that on 10 July 2006 at about 1300 hours the subject had been at her place of residence using hair dye, when she suddenly commenced suffering with shortness of breath. The subject's son, Clarence Morris who was home immediately summoned the authorities with the Chicago Fire Department ambulance number thirty-one responding. The subject was treated by the paramedics and then transported to the Jackson Park Hospital where she arrived with a "swollen shut" airway, and had suffered Anaphylactic Shock, per hospital records. The subject was subsequently pronounced dead on arrival by Dr. Williams at 1516 hours on 10 July 2006.*

*Reporting Investigator contacted the subject's grand-daughter, Deonna Holmes who related that the subject had suffered a similar reaction about ten years ago, when using hair dye. Ms. Holmes stated that the subject had been using a product named Dark & Lovely (natural black), and they would deliver the container to the Medical Examiners Office. The subject had a previous medical history of Asthma, and Hypertension for which she had been under the care of Dr. Daniel Scott who had prescribed Albuterol, and is on staff at the University of Chicago Hospital. Dr. Arunkumar was advised at 1845 hours. The subject was ordered to the institute for examination.*

To Path.

REPORTING INVESTIGATOR

SEAL NO.

**EXHIBIT**
*A*

SUPERVISOR SIGNATURE

REVISED 3/98  F-647



LabCorp® 1.27

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Specimen # | Control/Req Number | Pg # | | Clinical Information | | | |
| 193-508-0652-0 | H2C12572732 | 1 | | TOX 06-2459 1ML SERUM | | | |
| Fasting | Micro Source | Total Urine Volume | Report Status | | | | |
| N/A | | | S Final | | | | |

**Clinical Information**

TOX 06-2459 1ML SERUM

| Date Collected | Time Collected | Date Entered | Date Verified |
|---|---|---|---|
| 07/11/06 | | 07/12/06 | 07/14/06 |

Patient SSN

**Account**

12572732
CC-Office Of Medical Examiner     16
Cook County
2121 W Harrison St
Chicago IL 60612

312-997-4492

| Patient ID Number | Patient Phone Number |
|---|---|
| 180-JUL-06 | |

| Patient Name | Sex | Date of Birth |
|---|---|---|
| MORRIS, CORNELIA | F | |

Patient Address

PROV:
DR.ID: CUNLIFFE

**Comments**

PATIENT AGE: 083/00/00

Tests Requested   Immunoglobulin E, Total

| TESTS | RESULT | FLAG | UNITS | REFERENCE INTERVAL | LAB |
|---|---|---|---|---|---|
| Immunoglobulin E, Total | 1268 | High | IU/mL | 0 - 158 | BN |

Lab: CB LabCorp Dublin                    Director: Rose Goodwin, MD
        6370 Wilcox Road, Dublin, OH 43016-1296
Lab: BN LabCorp Burlington                Director: Frank Hancock, MD
        1447 York Court, Burlington, NC 27215-2230
For inquires, the physician may contact: Branch: 800-597-8026 Lab: 614-889-1061

LAST PAGE OF REPORT

©2005 Laboratory Corporation of America® Holdings
All Rights Reserved

FINAL REPORT

**LabCorp**® 1.27

| Specimen # 193-508-0651-0 | Control/Reg Number H2D12572732 | Page # 1 |
|---|---|---|

Clinical Information

TOX 06-2459 1ML SERUM

| Fasting N/A | Micro Source | Total Urine Volume | Report Status S / Prelim |
|---|---|---|---|

| Date Collected 07/11/06 | Time Collected | Date Entered 07/12/06 | Date Reported 07/13/06 |
|---|---|---|---|

Account

12572732
CC-Office Of Medical Examiner        16
Cook County
2121 W Harrison St
Chicago IL 60612

| Patient ID Number 180-JUL-06 | Patient Phone Number | Patient SSN |
|---|---|---|

| Patient Name MORRIS, CORNELIA | Sex F | Date of Birth |
|---|---|---|

Patient Address

312-997-4492
PROV:
DR. ID: CUNLIFFE

**Comments**
PATIENT AGE: 083/00/00

**Tests Requested** Tryptase

| TESTS | RESULT | FLAG | UNITS | REFERENCE INTERVAL | LAB |
|---|---|---|---|---|---|
| | | | ng/mL | <11.4 | CB |

Tryptase
We have received your specimen and it has been forwarded to another
laboratory for testing. Results will be forwarded to you as soon
as possible.
The finding of an elevated tryptase which subsequently decays to
background levels is convincing evidence the patient experienced a
systemic mast cell event. Tryptase values usually peak in serum 30-60
minutes after initial reaction and decay with a half-life of 2 hours.
Mast cell degranulation from localized allergic reactions do not result
in significant serum levels of this enzyme. This tryptase test measures
both the alpha and beta forms of tryptase and is therefore useful in
the diagnosis of mastocytosis and anaphylaxis. This test was developed
and its performance characteristics determined by IBT Reference Lab.
It has not been cleared or approved by the FDA.

----------------------------------------------------------------------
Lab: CB LabCorp Dublin                    Director: Rose Goodwin, MD
     6370 Wilcox Road, Dublin, OH 43016-1296
For inquires, the physician may contact: Branch: 800-597-8026 Lab: 614-889-1061
----------------------------------------------------------------------
                        LAST PAGE OF REPORT

©2005 Laboratory Corporation of America® Holdings.
All Rights Reserved

PRELIM REPORT



| 193-508-0651-0 | H2D12572732 | Pg 1 |
|---|---|---|

**LabCorp®** 1.27

| Fasting | Micro Source | Total Urine Volume | Report | Clinical Information |
|---|---|---|---|---|
| N/A | | | S / Final | TOX 06-2459 1ML SERUM |

| Date Collected | Time Collected | Date Entered | Date Reported | |
|---|---|---|---|---|
| 07/11/06 | | 07/12/06 | 07/13/06 | |

| Patient ID Number | Patient Phone Number | Patient | Account |
|---|---|---|---|
| 18D-JUL-06 | | | 12572732 |

Patient Name: MORRIS, CORNELIA    Sex: M    Date of Birth:

CC-Office Of Medical Examiner
Cook County                                    16
2121 W Harrison St
Chicago IL  60612

Comments
PATIENT AGE: 083/00/00

312-997-4492
PROV:
DR.ID: CUNLIFFE

Tests Requested  Tryptase

| TESTS | RESULT | FLAG | UNITS | REFERENCE INTERVAL | LAB |
|---|---|---|---|---|---|
| Tryptase | 20.7 | Alert | ng/mL | <11.4 | XW |

The finding of an elevated tryptase which subsequently decays to
background levels is convincing evidence the patient experienced a
systemic mast cell event. Tryptase values usually peak in serum 30-60
minutes after initial reaction and decay with a half-life of 2 hours.
Mast cell degranulation from localized allergic reactions do not result
in significant serum levels of this enzyme. This tryptase test measures
both the alpha and beta forms of tryptase and is therefore useful in
the diagnosis of mastocytosis and anaphylaxis. This test was developed
and its performance characteristics determined by IBT Reference Lab.
It has not been cleared or approved by the FDA.

---

Lab: CB LabCorp Dublin              Director: Rose Gobdwin, MD
     6370 Wilcox Road, Dublin, IH 43016-1296
Lab: XW IBT Reference Lab           Director: John Halsey, PhD
     11274 Renner Boulevard, Lenexa, KS 66219
For inquires, the physician may contact: Branch: 800-597-8026 Lab: 614-889-1061

---

LAST PAGE OF REPORT

REPORT

©2005 Laboratory Corporation of America® Holdings,
All Rights Reserved

MORRIS, CORNELIA          18D-JUL-06  193-508-0651-0 Seq# 1549 07-18-06 08:17ET

Microscopic Examination
Office of the Medical Examiner
County of Cook

CASE#: _180-7-06_

NAME: _CORNELIA MORRIS_

Heart: — myocyte hypertrophy; mild interstitial
fibrosis

Lung: — peribronchial eosinophils & eosinophils within vessel
bronchial lumen al mucus          lumina
congestion & moderate arteriosis, peripheral emphysematous
change

Liver: — few droplets of steatosis
congestion,

Spleen: — congestion

Kidney: — congestion
glomerulosclerosis, patchy interstitial nephritis

Brain: —NPC

pharyngeal:          — marked submucosal edema with
laryngeal mucosa          patchy chronic inflammation containing
eosinophils, mast cells.
focal hemorrhage

_____:

_____:

NPC = no pathologic changes          _Cunliffe_, MD
(Clare Cunliffe, M.D.)

# OFFICE OF THE MEDICAL EXAMINER
## COUNTY OF COOK, ILLINOIS

### REPORT OF POST MORTEM EXAMINATION

**NAME** Cornelia Morris

**AGE** 83    **RACE** Black    **SEX** Female

**ADDRESS** 8729 S. Prairie

**CITY & STATE** Chicago, Illinois

**CASE NO.** 180 July 2006

**DATE OF DEATH** July 10, 2006

**DATE EXAMINED** July 11, 2006 (9:00 am)

**EXAMINED BY** Clare H. Cunliffe, M.D.

<u>EXTERNAL EXAMINATION:</u>

The body is received unclothed. A hospital gown accompanies the body.

The body is that of an adult Black female, weighing 147 pounds, measuring 5 feet 7 inches in length, and appearing the stated age of 83 years.

The body is cold to the touch. Rigor mortis is present to an equal extent in all joints. Postmortem lividity is present in the posterior dependent portions of the body.

The hair is short, curly, and black. The eyes are closed. The eyelids are puffy. The corneae are clear. The irides are brown. An arcus senilis is present bilaterally. The skeleton of the nose is intact. The left earlobe is pierced one time. The lips and frenulum are without special note.

The chest is symmetrical. The breasts are pendulous. The abdomen is protuberant. On the lower abdomen in the midline, there is a vertical scar, 6 inches in length. The external genitalia are normal female.

Identification bands are present about the right wrist. The fingernails are short.

The back and buttocks are without special note.

The lower extremities are without special note. The toenails are short. An identification tag is present on the left great toe.

**THE BOARD OF COMMISSIONERS**
**TODD H. STROGER**
PRESIDENT

EARLEAN COLLINS      1st Dist.    PETER N. SILVESTRI      9th Dist.
ROBERT STEELE        2nd Dist.    MIKE QUIGLEY            10th Dist.
JERRY BUTLER         3rd Dist.    JOHN P. DALEY          11th Dist.
WILLIAM M. BEAVERS   4th Dist.    FORREST CLAYPOOL       12th Dist.
DEBORAH SIMS         5th Dist.    LARRY SUFFREDIN        13th Dist.
                     6th Dist.    GREGG GOSLIN           14th Dist.
JOAN PATRICIA MURPHY 6th Dist.    TIMOTHY O. SCHNEIDER   15th Dist.
JOSEPH MARIO MORENO  7th Dist.    ANTHONY J. PERAICA     16th Dist.
ROBERTO MALDONADO    8th Dist.    ELIZABETH ANN DOODY GORMAN  17th Dist.



**OFFICE OF THE MEDICAL EXAMINER**
**COUNTY OF COOK**

**NANCY LYNNE JONES, M.D.**
CHIEF MEDICAL EXAMINER

DR. ROBERT J. STEIN INSTITUTE
OF FORENSIC MEDICINE
2121 West Harrison Street
Chicago, Illinois 60612-3705
312/666-0500
FAX 312/997-4516

# FAX MEMO
## MEDICAL RECORDS DEPARTMENT
### FAX# 312-997-4400

DATE _8-7-08_

PAGE _1_ OF _____

TO: _MR Chadwick_

ATTENTION: _Records_

SUBJECT: _180 Jul 08_

**CONFIDENTIALLY NOTE**

The documents accompanying this telecopy transmission contain information from the Cook County Medical Examiner's Office, which is confidential or privileged. The information is intended to be for the use of the individual or entity named on this transmission sheet. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this telecopied information is prohibited. If you have received this telecopy in error, please notify us by telephone immediately so that we can arrange for the retrieval of the documents at no cost to you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES INDICATED ABOVE, PLEASE CONTACT THIS DEPARTMENT AS SOON AS POSSIBLE AT 312.666.0500.

SENDER: _Mr. Bantunw_
DEPARTMENT: _Record Sqv._



## OFFICE OF THE MEDICAL EXAMINER
## COUNTY OF COOK, ILLINOIS

PAGE 1 OF 1

### RESULTS OF TOXICOLOGIC ANALYSES

M.E. CASE NO.    0180 JUL 06              TOX. CASE NO.  06-2459

DECEASED NAME :    CORNELIA MORRIS

RACE :    BLACK                SEX : FEMALE        AGE : 77

AUTOPSY DATE  07/11/2006              REPORT DATE  07/24/2006

PATHOLOGIST : CLARE H CUNLIFFE M.D.

| DRUG/TISSUE | METHODOLOGY | RESULTS | AMOUNT |
|---|---|---|---|
| CARBON MONOXIDE | | | |
|    CENTRAL BLOOD | CO-OXIMETER | NEGATIVE | |
| BENZOYLECGONINE | | | |
|    PERIPHERAL BLOOD | ELISA | NEGATIVE | |
| ETHANOL | | | |
|    PERIPHERAL BLOOD | GC | NEGATIVE | |
| OPIATES | | | |
|    PERIPHERAL BLOOD | ELISA | NEGATIVE | |

7/24/06

NANCY B. WU CHEN, PH.D.
TOXICOLOGIST

Cornelia Morris
#180 July 2006

## EVIDENCE OF MEDICAL TREATMENT:

1. On the front of the neck in the midline, there is a surgical tracheostomy site, 1.8 by 1 inches. It appears recent. The incision extends into the left side of the pharynx, with surrounding hemorrhage.

2. On the left upper chest, there is an electrocardiograph pad.

3. At the right wrist there is a needle puncture and overlying bandage.

## INTERNAL EXAMINATION:

BODY CAVITIES: The body is entered by a Y-shaped incision. Within the soft tissues of the chest and abdomen, there is subcutaneous tissue emphysema. All organs are present in their usual anatomic positions, and present their usual anatomic relationships. No excess fluid is present in any body cavity.

NECK ORGANS: There is hemorrhage surrounding the anterior tracheostomy site. There is swelling and edema of the pharyngeal and laryngeal mucosa bilaterally, and the false vocal cords. There is edema of the base of the tongue. At the level of the vocal chords, the airway appears narrowed, measuring 0.1 inches in diameter. The vocal chords appear mildly swollen. The cartilages of the larynx and epiglottis are intact. The hyoid bone is intact.

RESPIRATORY SYSTEM: The right lung weighs 227 grams, and the left lung weighs 181 grams. The lungs have pale pink puffy pleural surfaces. On cut section, the pulmonary parenchyma is pale pink, with prominent bronchi containing occasional mucus plugs. No thromboemboli are present within the pulmonary trunk or its branches.

CARDIOVASCULAR SYSTEM: The heart weighs 311 grams. The coronary arteries show marked narrowing by calcific atherosclerosis. The left anterior descending artery shows 90% narrowing, with focal pinpoint narrowing, distally. The left circumflex and right coronary arteries each show 90% narrowing. The right coronary ostium is small. The valves of the heart and the great vessels are without special note. Serial sectioning of the myocardium reveals no focal areas of pathologic change. The left ventricle measures 0.8 inches in thickness. The aortic lining displays marked calcific and ulcerative atherosclerosis.

Cornelia Morris
#180 July 2006

INTERNAL EXAMINATION: (Continued)

HEPATOBILIARY SYSTEM: The liver weighs 1250 grams. The liver has a smooth brown/tan surface with sharp margins. Two hepatic cysts are noted, measuring 0.3 inches. The hepatic parenchyma is brown/tan. The gallbladder and biliary tract pursue their usual anatomic course, and display no evidence of pathologic change.

HEMOLYMPHATIC SYSTEM: The spleen weighs 67 grams. The spleen has a wrinkled gray capsule. On cut section, the splenic parenchyma is soft and red/tan. No lymphadenopathy is noted.

GASTROINTESTINAL SYSTEM: The esophagus shows hemorrhage adjacent to the tracheostomy site. The stomach is empty. The duodenum, small and large intestines are without special note.

GENITOURINARY SYSTEM: The right kidney weighs 112 grams, and the left kidney weighs 125 grams. The kidneys have granular red/tan surfaces. On cut section, the renal parenchyma is red to tan. The renal pelves, ureters, and urinary bladder are without special note. The bladder is empty. The uterus is small. There is remote bilateral tubal ligation. The ovaries appear atrophic.

ENDOCRINE SYSTEM: The pituitary, pancreas, and adrenal glands are without special note.

MUSCULOSKELETAL SYSTEM: There is a mild thoracolumbar kyphoscoliosis.

CENTRAL NERVOUS SYSTEM: The scalp displays no lacerations or hematomas. On reflecting the scalp, there is no subgaleal hemorrhage. The skull is intact. On entering the cranial cavity, there is no evidence of hemorrhage; specifically, there is no subdural or epidural hematoma. The leptomeninges are without special note. The brain weighs 1097 grams. Serial sectioning of the brain reveals no focal areas of pathologic change. The vessels at the base of the brain are without special note.

SPECIMENS:

1.  Samples of vitreous humor, blood, and bile are submitted for toxicologic analysis.

Page 4

Cornelia Morris
#180 July 2006

TOXICOLOGY:

Analysis of the blood reveals a serum tryptase level of 20.7 ng/ml, and a serum total IGE level of 1268 IU/ml.

ANATOMIC DIAGNOSES:

1. Edema and swelling of the base of the tongue, pharyngeal and laryngeal mucosa and vocal chords.

2. Hyperinflated pale lungs with bronchial mucus plugs.

3. Status post emergency tracheostomy.

4. Marked calcific coronary atherosclerosis.

5. Marked calcific and ulcerative aortic atherosclerosis.

6. Renal arteriolonephrosclerosis.

MICROSCOPIC EXAMINATION:

Sections from the laryngeal mucosa, and pharynx reveal submucosal edema and chronic inflammatory infiltrate including eosinophils and mast cells.

OPINION:

This 83 year old black female CORNELIA MORRIS, died of an anaphylactic reaction to hair dye.

MANNER OF DEATH: Accident.

CLARE H. CUNLIFFE, M.D.
Assistant Medical Examiner

CHC:lh
7/22/06

August 16 2006